The STATE ENGINEER, Jeris A. Danielson, and the Division Engineer for Water, Division No. 2, Steven J. Witte, Defendants/Appellants,

SRJ I Venture, Plaintiff/Appellee,

and

The Travelers Insurance Company and Rodney J. Preisser, Plaintiffs/Intervenors/Appellees,

v.

SMITH CATTLE, INC., a Kansas corporation, and Reid Cattle Co., a Colorado corporation, Defendants.

NO. 88SA349.

Supreme Court of Colorado, En Banc.

Oct. 2, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Peggy M. Ventura, First Asst. Atty. Gen., Denver, for defendant/appellant and plaintiff/appellee.

Brownstein Hyatt Farber & Madden, Charles B. White and Wayne F. Forman, Denver, for plaintiff/intervenor/appellee Travelers Ins. Co.

Anderson, Johnson & Gianunzio, Gregory L. Johnson and Mark T. Pifher, Colorado Springs, for plaintiff/intervenor/appellee Rodney J. Preisser.

Carlson, Hammond & Paddock, John U. Carlson and M. Wray Witten, Denver, amicus curiae for Colorado Water Congress.

Ben L. Wright, Jr., Denver, and Robert D. Gower, Elizabeth, amicus curiae for defendants.

Justice VOLLACK delivered the Opinion of the Court.

### I.

Appellants Jeris A. Danielson, the State Engineer, and Steven Witte, the Division Engineer for Water Division No. 2 (engineers), appeal the judgment of the Water Court Division No. 2 (water court), which held that the engineers may not apply the Arkansas River Rules[1] to wells owned by SRJ I Venture (Venture) and the Travelers Insurance Company (Travelers). The water court ruled that the engineers' attempt to apply the Arkansas River Rules to Venture's and Travelers' wells was barred by the doctrine of res judicata because in 1973 the water court had determined that Venture's and Travelers' wells, which at that time were owned by Rodney Preisser and Diane Preisser (Preissers), took their water from a source independent of the Arkansas River. Pursuant to section 13–4–102(1)(d), 6A C.R.S. (1987), the engineers appeal the judgment of the water court. They contend, first, that the doctrine of res judicata does not bar the application of the Arkansas River Rules to Venture's and Travelers' wells, and, second, that the application of the Arkansas River Rules to those wells would not deprive the owners of the wells of their vested constitutional right to divert unappropriated water. Finally, the engineers argue that the application of the Arkansas River Rules to Venture's and Travelers' wells would not exceed the statutory authority for those rules and would not violate the well owners' constitutional guarantees to due process of law.

We affirm the judgment of the water court and hold that the 1973 water court decree bars application of the Arkansas River Rules to Venture's and Travelers' wells. Therefore we address only the first of the engineers' arguments.

### II.

In June of 1972, Travelers filed with the water court an Application for Water Rights (application) in case No. W–2545. Travelers' application concerned wells identified by the water court as wells 1, 2, 3, 4, 5 and 6. The Preissers were substituted as applicants on November 6, 1972. The Preissers filed an application in case No. W–3890 in December of 1972. Case

---

[1]. The "Arkansas River Rules" are regulations applicable to the Arkansas River and its tributaries. Their formal title is "Rules and Regulations Governing the Use, Control and Protection of Surface and Ground Water Rights Located in the Arkansas River and its Tributaries." *See* Radosevich, Hamburg & Swick, *Colorado Water Laws* iv–34 (1975).

No. W–3890 concerned wells identified by the water court as wells 7, 8, 9, 10, 11, 12, 13, 14 and 15. The fifteen wells in both cases (the wells) were located in Lincoln County, Colorado, in Water Division No. 2. The water clerk delivered resumes of the applications to the engineers, pursuant to what is now section 37–92–302(3), 15 C.R.S. (1988 Supp.). The resumes stated that the applications requested a decree that the wells took their water from a source independent of the Arkansas River System. On September 25, 1973, the water court entered a decree in case Nos. W–2545 and W–3890 which adjudicated water rights belonging to the Preissers. The water court's September 25, 1973, decree found that

> Little Horse Creek, Steel Fork and other tributaries of Little Horse Creek above Horse Creek constitute a separate basin; that Horse Creek receives water from these tributaries only in time of flood; that there is no significant hydraulic connection between this basin and the Arkansas River; that ground water in storage in the basin would not reach the Arkansas River for a period between 300 and 800 years, if it would reach the Arkansas at all ... and that the wells in this basin should not be administered as part of the Arkansas River supply....

Horse Creek is a tributary of the Arkansas River. Thus the water court decreed that the water supplying the Preissers' wells came from a source independent of the Arkansas River.

On June 26, 1985, Robert Jesse, who was at that time Division Engineer for Water Division No. 2, wrote to the Preissers notifying them that the Office of the State Engineer had placed a "call" on the Preissers' wells. The letter also stated that, because the Preissers' water rights were junior to the water rights of Reid Cattle Company and Smith Cattle Company, the Preissers' wells were subject to the Arkansas River Rules.

On September 16, 1986, Venture, a general partnership which now owns six of the wells formerly owned by the Preissers (wells 5, 11, 12, 13, 14 and 15), brought this declaratory judgment action. Venture's complaint sought declaratory judgments that the Arkansas River Rules did not apply to its wells and that Robert Jesse's call on its wells was void. Venture's complaint also sought an injunction against the engineers' enforcement of the Arkansas River Rules, an injunction invalidating the call on its wells, and other relief.

The engineers moved for summary judgment on November 4, 1986. On November 20, 1986, Venture entered a cross-motion for summary judgment in which it argued that the water court's decree of September 25, 1973, was res judicata on the issue of the applicability of the Arkansas River Rules to Venture's wells.

Travelers moved to intervene on December 12, 1986, on the basis of its ownership of eight of the wells (wells 1–4 and 7–10). The water court granted Travelers' motion to intervene on January 6, 1987.

On May 29, 1987, the water court granted Venture's cross-motion for summary judgment. The water court reasoned that because it had previously ruled that the wells took their water from a basin separate from the Arkansas River, the engineers could not apply the Arkansas River Rules to Venture's and Travelers' wells.

Rodney Preisser moved to intervene on January 21, 1988, on the ground that he held a first deed of trust upon the water rights owned by Venture, and had begun an action to foreclose on Venture for nonpayment. The water court granted Rodney Preisser's motion to intervene on February 16, 1988.

On August 30, 1988 the water court made final its order granting Venture's cross-motion for summary judgment. On October 13, 1988, the engineers appealed the final order of the water court granting Venture's cross-motion for summary judgment.

### III.

The engineers contend that the doctrine of res judicata does not bar the application of the Arkansas River Rules to the wells. We disagree.

■ In *City of Westminster v. Church*, 167 Colo. 1, 9, 445 P.2d 52, 55 (1968), we noted that "[r]es judicata constitutes an absolute bar only when there is in both the prior and subsequent suits identity of subject matter, identity of the cause of action, identity of parties to the action, and identity of capacity in the persons for which or against whom the claim is made." The "same claim or cause of action" requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies. 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.410(1) (2d ed. 1988). *See Hildebrand v. Dart Indus., Inc.*, 640 F.2d 289 (10th Cir. 1981) (action barred by res judicata where plaintiffs attempted to cure statute-of-limitations defect in fraudulent-inducement claim by adding count for fraudulent termination of distributorship agreement).

■ In *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1974), we noted that the doctrine of res judicata, which, strictly speaking, refers to claim preclusion, "holds that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. It bars relitigation not only of all issues actually decided, but of all issues that might have been decided." Res judicata bars the claims of those who were parties to the previous action or in privity with a party to the previous action. This is because, in Justice Traynor's words, "[t]he requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided." *Bernhard v. Bank of America Nat'l Trust and Savings Ass'n*, 19 Cal.2d 807, 809, 122 P.2d 892, 894 (1942) (approved in *Pomeroy*, 183 Colo. at 350, 517 P.2d at 399). In *Closed Basin Landowners Association v. Rio Grande Water Conservation District*, 734 P.2d 627 (Colo.1987), we stated that "[a] trial court has jurisdiction to render an erroneous decision, which may be reviewed on appeal. Consequently, a judgment entered within the jurisdiction of the court, even though wrong, is not subject to collateral attack." (Citations omitted.)

Therefore we must determine whether the water court had original jurisdiction when it entered its 1973 decree, whether the prior action and the instant action concern the same subject matter and cause of action, and whether the engineers are bound by the water court's decree.

A.

■ We first consider whether the water court had subject-matter jurisdiction to enter its 1973 decree. Travelers filed the original application with the water court in June of 1972. The Preissers were substituted as applicants on November 6, 1972. None of the parties disputes that Travelers and the Preissers properly invoked the jurisdiction of the water court by filing with the water clerk applications setting forth the facts supporting their claims and the required descriptions of the subject of their claims. *See* §§ 37–92–302(1)(a), (2), 15 C.R.S. (1988 Supp.); *Closed Basin*, 734 P.2d at 632. The water clerk thereafter correctly prepared and distributed resumes of the applications. § 37–92–302(3)(a), (b), (c), 15 C.R.S. (1974).

At the time of the water court's original proceedings, section 37–92–203(1), 15 C.R.S. (1974), gave district courts, acting through water judges, exclusive jurisdiction over "water matters." That section defined water matters to include "only those matters which this article [the Water Right Determination and Administration Act of 1969, sections 37–92–101 to –602, 15 C.R.S. (1974 & 1988 Supp.) (Water Rights Act or Act)] and any other law shall specify to be heard by the water judge of the district courts." § 37–92–203(1). Section 37–92–301(2) gave referees and water judges the

> authority and duty to rule upon determinations of water rights and conditional water rights and the amount and priority thereof, determinations with respect to changes of water rights, plans for augmentation, approvals of reasonable diligence in the development of appropriations under conditional water rights, and determinations of abandonment of water rights or conditional water rights....

The engineers argue that water judges did not have jurisdiction to determine water rights to nontributary ground water outside a designated basin until that power was explicitly conferred on them by the legislature's 1983 amendment to section 37–92–203(1), 15 C.R.S. (1988 Supp.).[2]

We held in *Kuiper v. Well Owners Conservation Association,* 176 Colo. 119, 131, 490 P.2d 268, 274 (1971), that the Water Rights Act need not mention a specific type of action to confer the water court's jurisdiction over it. Throughout the original proceedings before the water court the parties assumed that the applications concerned a "subject that goes to the very heart of administration of water." *Id.* This court heard and ruled on Smith Cattle's appeal from the water court's 1973 decree, *In re Application for Water Rights of Preisser,* 190 Colo. 243, 545 P.2d 711 (1976), indicating that we also assumed the water court had original subject-matter jurisdiction. *See Stonewall Estates v. CF & I Steel Corp.,* 197 Colo. 255, 258, 592 P.2d 1318, 1319 (1979) (referring approvingly to water court decision that it had subject-matter jurisdiction over claims involving nontributary waters).

The engineers argue in their reply brief that in 1973 the water court lacked jurisdiction to adjudicate claims over nontributary ground water outside a designated basin.[3] Our decision in *State v. Southwestern Colorado Water Conservation District,* 671 P.2d 1294 (Colo.1983), does not demonstrate that in 1973 the water court lacked

jurisdiction. In *State v. Southwestern* we held that "claims for nontributary ground water outside designated ground water basins cannot be adjudicated under the Water Rights Act." *Id.,* 671 P.2d at 1311. Our holding in *State v. Southwestern,* however, did not deprive the water court of the jurisdiction it had entertained in 1973. In *State v. Southwestern* we noted that earlier cases, *Preisser* included, suggested that the water court had jurisdiction to adjudicate rights to nontributary ground water outside a designated basin. *Id.* We then stated that to the extent earlier cases so held we would no longer follow them. *Id.* Thus *State v. Southwestern* did not overrule our prior cases but instead adopted a rule of interpretation for future cases.[4]

We conclude that the water court possessed subject-matter jurisdiction when it entered its 1973 decree.

### B.

The second issue to be resolved is whether the prior proceedings and the present action concern the same subject matter and the same cause of action. *City of Westminster,* 167 Colo. at 9, 445 P.2d at 55. In the first action the water court determined that the wells drew their water from a source independent of the Arkansas River. The water court's 1973 decree declared that "Little Horse Creek, Steel Fork and other tributaries of Little Horse Creek above Horse Creek constitute a separate basin," and that "Horse Creek receives wa-

---

**2.** In 1983 the General Assembly amended section 37–92–203(1) to include within water matters "determinations of rights to nontributary ground water outside of designated ground water basins."

**3.** The engineers did not address in their opening brief the issue of whether the water court had original subject-matter jurisdiction. Travelers argued in its answer brief that in 1973 the water court had subject-matter jurisdiction. Travelers cited *District 10 Water Users Association v. Barnett,* 198 Colo. 291, 599 P.2d 894 (1979), *Kuiper v. Well Owners Conservation Association,* 176 Colo. 119, 490 P.2d 268 (1971), and *Pikes Peak Golf Club, Inc. v. Kuiper,* 169 Colo. 309, 455 P.2d 882 (1969), in which we proceeded on the assumption that water courts had jurisdiction over nontributary ground waters. Travelers

also cited *In re Water Rights of Fort Lyon Canal Co.,* 184 Colo. 219, 222, 519 P.2d 954, 956 (1974), in which we held that water courts have jurisdiction over claims to nontributary water which is not designated ground water. The engineers contended in their reply brief that *Perdue* has been limited to its facts, and that we gave *Perdue* unfavorable treatment in *State v. Southwestern Colorado Water Conservation District,* 671 P.2d 1294, 1310 (Colo.1983).

**4.** After our initial opinion in *State v. Southwestern,* the General Assembly amended section 37–92–203(1) to expand the definition of water matters to include determinations of rights to nontributary ground water outside designated ground water basins. § 37–92–203(1), 15 C.R.S. (1988 Supp.); *State v. Southwestern,* 671 P.2d at 1311, n. 25.

ter from these tributaries [5] only in time of flood." The water court's decree also held that "ground water in storage in the basin would not reach the Arkansas River for a period between 300 and 800 years, if it would reach the Arkansas at all." The present action concerns the applicability of the Arkansas River Rules to the supply of water determined by the water court to be independent of the Arkansas River. The Arkansas River Rules apply only to ground water in the Arkansas River Basin. *See Kuiper v. Atchinson, Topeka and Santa Fe Ry. Co.*, 195 Colo. 557, 558, 581 P.2d 293, 294 (1978) ("[a]cting under section 37–29–501, [15 C.R.S. (1978),] and effective as of February 19, 1973, the State Engineer of Colorado adopted rules governing the use of ground water in the Arkansas River Basin"). When the water court determined that the wells took their water from a source independent of the Arkansas River, it necessarily decided that the Arkansas River Rules did not apply to that source of water. Therefore the previous water court proceedings and the present action concern the same subject matter and the same cause of action.

## C.

The final question for our consideration is whether the engineers are bound by the decree of the water court. The resumes of the applications were published as required by section 37–92–302(3)(b), 15 C.R.S. (1974 Supp.). Section 37–92–302(3)(c) directed the water clerk to send resumes of applications to persons who had requested such resumes, and to those who the referee had reason to believe would be affected by a decree from the water court. Upon receipt of adequate notice the engineers were bound by the water court's order whether they chose to appear or not. *In re Priorities of Water Rights in Water Dist. No. 19*, 194 Colo. 510, 515, 574 P.2d 83, 87 (1978); *City of Westminster v.*

*Church*, 167 Colo. 1, 7, 445 P.2d 52, 54 (1968). Thus the proper resolution of this issue turns on whether the clerk's resumes of the Preissers' applications contained adequate notice to the engineers.

In the present case, the engineers received actual notice of the Preissers' claims. The engineers claim that they are not bound by the water court's decree because the clerk's resumes of the applications did not identify as nontributary the waters which were the subject of the Preissers' claims. The engineers argue that the resumes did not satisfy the requirements of the Water Rights Act. If the resumes were insufficient under the Act because they failed to provide the engineers with adequate notice of the Preissers' claims, then the water court's 1973 decree was void and cannot bar the present action. *Stonewall Estates*, 197 Colo. at 259, 592 P.2d at 1320.

We have on several occasions considered whether resumes prepared by the water clerk contained notice of claims sufficient to satisfy the requirements of the Act. In *Pueblo West*, 689 P.2d at 601, we held that a resume which did not identify the source of the water which was the subject of the respondent's claims to water storage rights contained sufficient notice because it referred to previous decrees which did identify the source. We stated that "because the language of those conditional decrees was broad enough to encompass storage of western slope water in exchange for eastern slope water, the resume, which made reference to those decrees, was sufficient to put interested persons on notice of the absolute storage rights sought by Southeastern." *Id.* In *Danielson v. Jones*, 698 P.2d 240, 244 (Colo.1985), we held that a resume did not give interested parties adequate notice of Jones's intention to use an additional 27.5 gallons per minute of water in his well for storage and fish culture because the resume stated that Jones

---

5. The engineers claim that the water court's use of this word indicates that it considered Little Horse Creek and other creeks to be tributaries of the Arkansas River. We conclude that the water court used the word "tributaries" here in the same sense it used the word earlier in this sentence, that is, as a noun to refer to creeks running into Little Horse Creek. This reading makes sense of the water court's conclusion that the Little Horse Creek basin is independent from the Arkansas River basin.

sought the water for "domestic, stockwatering and irrigation purposes."

The present case resembles *Closed Basin Landowners Association v. Rio Grande Water Conservation District,* 734 P.2d 627 (Colo.1987). In that case the Rio Grande Water Conservation District filed an application for a conditional water right to develop the "Closed Basin Project." *Id.,* 734 P.2d at 629. The project involved lowering the water table of a selected area by removing the water and transporting it to the Rio Grande River. *Id.* Appellants contended that the resume contained insufficient notice of Rio Grande's claims because it failed to identify the location of wells Rio Grande planned to drill to remove the water. *Id.* at 634. We stated that "compliance with the notice provisions of the Act must be judged with reference to the underlying purpose of the notice: to put interested parties to the extent reasonably possible on inquiry notice of the nature, scope, and impact of the proposed diversion." *Id.*

The clerk's resumes of the applications "put interested parties on inquiry notice of the nature, scope, and impact of the proposed" determination, and complied with the provisions of the Water Rights Act. *Closed Basin,* 734 P.2d at 635. The resumes of the applications indicated the Preissers sought a "decree determining that [the] wells take their water from a source independent of the Arkansas River System." The 1973 water decree stated that

> Little Horse Creek, Steel Fork and other tributaries of Little Horse Creek above Horse Creek constitute a separate basin; that Horse Creek [the Arkansas River tributary] receives water from these tributaries only in time of flood; that there is no significant hydraulic connection between this basin and the Arkansas River; that ground water in storage in the basin would not reach the Arkansas River for a period of 300 to 800 years, if it would reach the Arkansas at all ... and that the wells in this basin should not be administered as part of the Arkansas River supply....

The resumes adequately identified the Preissers' claims, and were sufficient to put the engineers on inquiry notice that the water court might decree that the wells took their water from a source independent of the Arkansas River System. *See Closed Basin,* 673 P.2d at 635. Based on the engineers' knowledge that the Arkansas River Rules do not apply to water in separate basins, the resumes put the engineers on actual notice that the Preissers considered the Arkansas River Rules inapplicable to their wells. Because the engineers received adequate notice of the Preissers' application they are bound by the 1973 decree. *City of Westminster,* 167 Colo. at 7, 445 P.2d at 54.

We affirm the judgment of the water court.