Concerning the Application for Water Rights of Monaghan Farms, Inc.

**MONAGHAN FARMS, INC.,**
Applicant–Appellee,

v.

**The CITY AND COUNTY OF DENVER,** Acting By and Through its **BOARD OF WATER COMMISSIONERS,** Objector–Appellant,

and

State Engineer and Division Engineer for Water Division No. 1; L.C. Fulenwider, Inc.; Van Schaack Holdings, Ltd.; H.C. Van Schaack, III; L.C. Fulenwider, Jr.; and L.C. Fulenwider, III, Appellees.

No. 89SA51.

Supreme Court of Colorado, En Banc.

Feb. 19, 1991.

As Modified on Denial of Rehearing March 18, 1991.

Baker & Hostetler, Kenneth J. Burke, Denver, for applicant-appellee.

Wayne D. Williams, Michael L. Walker, Henry C. Teigen, Sara Duncan, Denver, for objector-appellant.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Denver, for appellees State Engineer and Div. Engineer for Water Division No. 1.

Moses, Wittemyer, Harrison & Woodruff, P.C., Robert E.L. Beebe, Boulder, for appellees L.C. Fulenwider, Inc., Van Schaack Holdings, Ltd., H.C. Van Schaack, III, L.C. Fulenwider, Jr., and L.C. Fulenwider, III.

Justice LOHR delivered the Opinion of the Court.

The appellant, the City and County of Denver, acting by and through its Board of Water Commissioners (Denver), appeals from an amended decree of the District Court, Water Division No. 1 (water court), that granted the application of appellee Monaghan Farms, Inc. (Monaghan Farms) for determination of rights to "not nontributary" [1] ground water from the portion of

---

**1.** As used in article 90 of title 37 of the Colorado Revised Statutes, "nontributary ground water" is a defined term. *See* § 37–90–103(10.5), 15 C.R.S. (1990). The phrase "not nontributary ground water" is used to describe ground water not within the statutory definition of nontribu-

the Denver aquifer underlying Monaghan Farms' property. The original decree specified the annual amount of withdrawals as 2590.8 acre-feet, the yield estimated by Monaghan Farms in its application. The amended decree revised that amount upward by 151.2 acre-feet per year to conform to the state engineer's determination of the available water, under procedures prescribed in the original decree.

Denver challenges both the original and amended decrees because it contends that not nontributary ground water in the Denver aquifer must be treated as tributary water[2] and therefore is subject to the requirements of prior appropriation. Denver argues that the water court could determine only a conditional water right for this not nontributary ground water because it has not been put to beneficial use. *See* § 37–92–103(6), (12), 15 C.R.S. (1990) (defining "conditional water right" and "water right"). Denver also contends that the published resumes describing Monaghan Farms' original and amended applications for water rights were defective in several respects.

Monaghan Farms moved to dismiss Denver's appeal for lack of subject matter jurisdiction, and we reserved ruling on the motion until after oral argument. We now dismiss this appeal for lack of subject matter jurisdiction resulting from Denver's failure to protest the referee's ruling and appeal from the original decree. Because of the dismissal we do not address the issue of whether the law governing the appropriation of tributary water is applicable to waters in the Denver aquifer not within the definition of "nontributary ground water" under section 37–90–103(10.-5), 15 C.R.S. (1990).

## I.

On May 30, 1985, Monaghan Farms applied for a decree determining rights to all the ground water in the Denver, Arapahoe and Laramie–Fox Hills aquifers beneath specified parcels of its property located in Adams County and outside the boundaries of any designated ground water basin. That application described the locations of wells proposed to be constructed to divert the water, the proposed well depths, the time that applications for well permits had been filed with the state engineer, the amount of ground water to be pumped annually, the proposed use of the water, and a description of the overlying land. The source of the ground water was specified to be nontributary ground water from the Denver, Arapahoe and Laramie–Fox Hills formations, and it was averred that the pumping of these wells would have *de minimis* impact on natural streams. The application also sought a determination that the rights to nontributary ground water sought to be adjudicated would not be subject to the requirements of section 37–92–301(4), 15 C.R.S. (1990), concerning periodic findings of reasonable diligence in applying water to beneficial use as necessary to maintain a conditional water right in effect. The water clerk published the resume of this application in May 1985. Thereafter, on December 30, 1985, upon the motion of Monaghan Farms, the water court trifurcated the application to create a separate application for each aquifer.[3]

After Monaghan Farms' application was filed, the General Assembly adopted what is commonly known as Senate Bill 5, effective July 1, 1985. Ch. 285, 1985 Colo.Sess. Laws 1160–1169. Among its many provi-

tary ground water. *See Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1108 n. 1 (Colo. 1990).

2. We use the term "tributary water" to describe "waters of the state," a term defined in § 37–92–103(13), 15 C.R.S. (1990), as follows:
   "Waters of the state" means all surface and underground water in or tributary to all natural streams within the state of Colorado, except waters referred to in section 37–90–103(6) [defining "designated ground water"].

It is "waters of the state" that are the subject of a "water right," pursuant to the definition found in § 37–92–103(12), 15 C.R.S. (1990):
   "Water right" means a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same.

3. The applications for the Arapahoe and Laramie–Fox Hills aquifers are not involved in this appeal.

sions, that statute defined "nontributary ground water" [4] and set forth requirements for judicially approved plans for augmentation concerning wells to be completed in the Denver aquifer, among others, that would withdraw "ground water which is not nontributary ground water." Ch. 285, sec. 2, § 37–90–103(10.5), sec. 3, § 37–90–137(9)(c), 1985 Colo.Sess.Laws 1160, 1161, 1165–66. The legislation did not specifically address whether rights to such ground water should be determined subject to the same requirements for appropriation as tributary ground water, including the requirement that only a conditional water right subject to reasonable diligence requirements can be decreed unless and until the appropriation is completed by application of water to beneficial use.

On December 30, 1985, the same day that the water court granted trifurcation, Monaghan Farms submitted an amended application describing its request for determination of rights to Denver aquifer ground water. The application averred that the water is nontributary ground water as defined in section 37–90–103(10.5), 15 C.R.S. (1990), and estimated the amount of water to be produced annually as 2590.8 acre-feet. The application also included a request for a conditional water right in the event that the court determined that any portion of the ground water is not nontributary ground water as defined by section 37–90–103(10.5). This alternative request was set forth in paragraph 6 of the prayer for relief, which provides:

6. In the event that this Court determines that any portion of the subject ground water to be withdrawn by Applicant's wells is not "nontributary ground water" as defined in C.R.S. § 37–90–103(10.5),

(a) specifically determining the quantity of such water available and the extent of the depletive effect on the natural stream system from its withdrawal, as contemplated in C.R.S. § 37–90–137(9)(c);

(b) retaining jurisdiction to approve a plan for augmentation providing for the replacement of actual stream depletion to the extent necessary to prevent any injurious effect prior to the use of such ground water;

(c) determining that the appropriation for such water was initiated on May 30, 1985 based upon Applicant's intent and action, and granting *conditional water rights* for such water.

(Emphasis added.) The water clerk published a resume setting forth in full the relevant provisions of this application.

On February 24, 1986, Monaghan Farms amended its amended application. This amendment changed the caption of the case to read:

Amended Application for Nontributary Groundwater Rights in the Nontributary Denver Aquifer, or in the Alternative for Nontributary Groundwater Rights in the Nontributary Denver Aquifer and Quantification of Amount and Depletive Effects of Withdrawal of Not Nontributary Groundwater in the Denver Aquifer.

This amendment also revised Monaghan Farms' alternative prayer, applicable in the

---

**4.** The definition of nontributary ground water now appears in relevant part as follows in § 37–90–103(10.5), 15 C.R.S. (1990):

"Nontributary ground water" means that ground water, located outside the boundaries of any designated ground water basins in existence on January 1, 1985, the withdrawal of which will not, within one hundred years, deplete the flow of a natural stream, including a natural stream as defined in sections 37–82–101(2) and 37–92–102(1)(b), at an annual rate greater than one-tenth of one percent of the annual rate of withdrawal. The determination of whether ground water is nontributary shall be based on aquifer conditions existing at the time of permit application; except that in recognition of the de minimis amount of water discharging from the Dawson, Denver, Arapahoe, and Laramie-Fox Hills aquifers into surface streams due to artesian pressure, when compared with the great economic importance of the ground water in those aquifers, and the feasibility and requirement of full augmentation by wells located in the tributary portions of those aquifers, it is specifically found and declared that, in determining whether ground water of the Dawson, Denver, Arapahoe, and Laramie-Fox Hills aquifers is nontributary, it shall be assumed that the hydrostatic pressure level in each such aquifer has been lowered at least to the top of that aquifer throughout that aquifer.

event the court should decide that any of the water to be withdrawn is not nontributary. Monaghan asked:

6. In the event that this Court determines that any portion of the subject ground water to be withdrawn by Applicant's wells is not "nontributary ground water" as defined in C.R.S. § 37–90–103(10.5):

a) determining the quantity of such water which may be withdrawn pursuant to § 37–90–137(4), C.R.S., and determining the extent of the depletive effects, if any, on the natural stream systems from its withdrawal, including the distances of such wells from points of contact of the natural stream systems and the Denver aquifer, all as contemplated by § 37–90–137(9)(c), C.R.S.;

b) retaining jurisdiction to approve a plan for augmentation prior to the use of such water providing for the replacement of depletions of the affected stream systems to the extent necessary to comply with the provisions of § 37–90–137(9)(c), C.R.S.;

c) adjudicating and confirming Applicant's right to use such ground water for the purposes described in paragraph 7 of the Amended Application [describing proposed uses of the water], including the right to reuse and successively use such water to extinction, subject to the required replacement of stream depletions referred to above pursuant to the augmentation plan to be applied for and approved under retained jurisdiction.

One effect of this amendment was to delete the alternative request for a determination of a conditional water right as set forth in the prior amended application and substitute the foregoing paragraph 6(c) requesting a decree without a reasonable diligence condition (absolute decree). The water clerk published a resume setting forth in full the relevant provisions of this amendment to the amendment.

The state engineer submitted his determination "as to the facts of such application" as required by section 37–92–302(2), 15 C.R.S. (1990). That determination stated that the ground water to be withdrawn would be not nontributary ground water. The state engineer also determined that the annual amount of water available for withdrawal from the Denver aquifer underlying the lands of Monaghan Farms is 2742 acre-feet per year, 151.2 acre-feet more than Monaghan Farms had estimated in its amended application. The state engineer's findings of fact are "presumptive as to such facts, subject to rebuttal by any party." *Id.*

Denver filed no statement of opposition to the application or amended applications, although others did. The water court referee entered a ruling on March 23, 1987. The referee granted Monaghan Farms' application for determination of rights to ground water in the Denver aquifer, giving effect to the state engineer's findings and determining that the ground water was not nontributary. The referee ruled that this right was not subject to reasonable diligence requirements but was to be exercised only pursuant to a court-approved plan for augmentation under section 37–90–137(9)(c), 15 C.R.S. (1990). The referee recognized the right of Monaghan Farms to all the Denver aquifer ground water located beneath its property, but the ruling quantified the annual withdrawals at 2590.8 acre-feet per year because Monaghan Farms had estimated only that volume of water to be available. The ruling allowed Monaghan Farms to seek an amended decree "confirming [Monaghan Farms'] legal entitlement to" the additional 151.2 acre-feet that the state engineer had found available. Pursuant to the ruling, the water court would also retain jurisdiction to adjust the average annual amount of withdrawals to conform to local aquifer characteristics as determined from information obtained from actual well drilling or the drilling of representative wells, as provided by section 37–92–305(11), 15 C.R.S. (1990 Supp.).

The water judge, in accordance with section 37–92–304(5), (7) and C.R.C.P. 91, found that no protest to the referee's ruling had been filed, confirmed and approved the referee's ruling and made the ruling the decree of the water court on April 29, 1987. On September 30, 1987, Monaghan

Farms filed a motion, in accordance with the decree, to amend the decree to allow Monaghan Farms to withdraw an additional 151.2 acre-feet per year to conform to the state engineer's determination of the amount of not nontributary ground water available. On November 27, 1987, Denver filed a "statement of opposition" to Monaghan Farms' request for an amended decree. The statement of opposition did not take issue with any provisions of the original decree, nor did it object to the 151.2 acre-feet increase in the permitted annual withdrawals.[5] This was Denver's first entry into these water proceedings.

The water court held a pretrial conference on June 30, 1988. At that conference Denver for the first time raised the issue whether water rights decreed for not nontributary ground water must be conditional, and the court requested briefs. In its brief Denver argued that the water court could grant only a conditional right to not nontributary water. Denver also challenged the adequacy of the resume notices. For these reasons, Denver argued that the water court not only should deny the amendment but should "strike the original decree." On December 23, 1988, the water court rejected Denver's arguments and amended the judgment to allow Monaghan Farms to withdraw 2742 acre-feet per year from the not nontributary ground water in the Denver aquifer underlying its property and entered the amended judgment and decree, *nunc pro tunc* April 29, 1987. On February 3, 1989, Denver appealed this amended decree.

## II.

■ Two jurisdictional barriers prevent this court from reviewing the original decree dated April 29, 1987. First,

"[a]ppellate review shall be allowed to the judgment and decree, or any part thereof, as in other civil actions, but no appellate review shall be allowed with respect to that part of the judgment or decree which confirms a [referee's] ruling with respect to which no protest was filed." § 37–92–304(9), 15 C.R.S. (1990). This provision limits appellate review of water decrees by requiring a protest to a referee's ruling as a jurisdictional prerequisite. No one, including Denver, protested the ruling of the referee, so the water court, following the directive in sections 37–92–304(5) and (7), confirmed the referee's ruling and entered that ruling as its own judgment and decree. *See* C.R.C.P. 91. The amended judgment, later entered on the motion of Monaghan Farms, increased the annual withdrawal by 151.2 acre-feet per year to conform to the state engineer's fact determination by following the procedures prescribed in the original decree, but in all other respects the amended judgment merely confirmed the unprotested referee's ruling. Thus, Denver's failure to protest the referee's ruling deprived this court of appellate jurisdiction over the original water court decree.

■ Denver's failure to appeal the original decree within the statutory time limit also renders this appeal jurisdictionally defective. The Colorado Appellate Rules control appellate review of water decrees. C.A.R. 1(a)(2). C.A.R. 4(a) requires the filing of a notice of appeal within forty-five days from the date of entry of the judgment.[6] The water court entered its original decree on April 29, 1987, so the time to appeal that decree expired on June 13, 1987. The failure of any party to appeal within the prescribed time deprived this court of appellate jurisdiction. *See Widen-*

---

5. Monaghan Farms' motion to amend the decree also requested that the water court retain jurisdiction to increase the permissible annual withdrawals "without further notice" based on site-specific data obtained during actual construction of the wells and test holes. Denver's specific objection was addressed to the request for the right to make future modifications without notice to interested parties. Monaghan Farms later withdrew the request to provide for amendments to permissible withdrawals with-

out notice, and the amended judgment provides for notice.

6. C.A.R. 4(a) extends the time if the parties are not present when the judgment is announced. Denver did not enter the proceedings and become a "party" prior to issuance of the original decree. In any event, Denver does not contend that it appealed from the original decree within the time prescribed by C.A.R. 4(a), or at all.

*er v. District Court,* 200 Colo. 398, 400, 615 P.2d 33, 34 (1980).

## III.

Denver, however, argues that this court has jurisdiction to hear this appeal for three reasons. First, the resume notices were inadequate. Second, the water court lacked subject matter jurisdiction to issue an absolute decree for a right to not nontributary water. Inadequate notice or lack of subject matter jurisdiction make the original decree void, Denver asserts, so it may challenge that void decree at any time. Finally, Denver contends that the amendment to the original decree materially affects its rights and therefore allows it to challenge the original decree on this appeal. We address each of these arguments in turn.

## A.

▮ Adequate notice is essential to ensure that interested parties have a meaningful opportunity to participate in judicial water right determinations that may affect their vested rights. *Danielson v. Jones,* 698 P.2d 240, 245 (Colo.1985). Notice of proceedings to determine water rights is provided through the special statutory procedure set forth in section 37–92–302, 15 C.R.S. (1990).[7] That section requires an applicant to file an application with the water clerk setting forth "facts supporting the ruling sought." § 37–92–302(1)(a). The water clerk must prepare a monthly resume of applications that states "the name and address of the applicant, a description of the water right or conditional water right involved, and a description of the ruling sought." § 37–92–302(3)(a). The water clerk then publishes the resume in local newspapers of general circulation, § 37–92–302(3)(b), and mails copies to potentially affected parties, § 37–92–302(3)(c).

▮ The resume constitutes the notice of the water right decree sought. *Danielson,* 698 P.2d at 245. This resume-notice procedure substitutes for personal service and provides the only notice to interested parties of pending water right proceedings. *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.,* 734 P.2d 627, 633 (Colo.1987). The resume must put interested parties "to the extent reasonably possible on inquiry notice of the nature, scope, and impact of the proposed diversion." *Id.* at 634. Thus, compliance with the statutory notice provisions is evaluated by an inquiry notice standard. *Id.* Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further. The receipt of inquiry notice charges a party with notice of all the facts that a reasonably diligent inquiry would have disclosed. *Colburn v. Gilcrest,* 55 Colo. 92, 94, 151 P. 909, 910 (1915). Consequently, alleged deficiencies invalidate the resume only if the resume taken as a whole is insufficient to inform or put the reader on inquiry of the nature, scope and impact of the proposed diversion.

We have had several occasions to consider the adequacy of resume notices. In *Stonewall Estates v. CF & I Steel Corp.,* 197 Colo. 255, 592 P.2d 1318 (1979), we held that a resume of an application for a nontributary water right was defective when the resume failed to mention the nontributary character of the water. Nontributary claims are administered independently of the tributary priority system that protects senior appropriators. Because an application for determination of a water right can be assumed to relate to tributary water, senior appropriators were entitled to rely on the tributary priority system to protect their rights. *Id.* at 258, 592 P.2d at 1320. As a result, senior appropriators had no reason to inquire about possible injury from the new claim. *Id.*

---

**7.** Monaghan Farms contends that the § 37–92–302 notice requirements do not apply to applications to determine rights to ground water from wells described in § 37–90–137(4), which are involved in the present case. We reject this contention because "[r]ights to non-

tributary ground water outside of designated ground water basins may be determined in accordance with the procedures of sections 37–92–302 to 37–92–305." § 37–90–137(6), 15 C.R.S. (1990).

In *Pueblo West Metro. Dist. v. S.E. Colorado Water Conservancy Dist.*, 689 P.2d 594 (Colo.1984), the applicant sought to make partially absolute two conditional storage right decrees for eastern slope reservoirs. Certain protestants contested the adequacy of the resume notice to advise interested persons that the source of the water that had been stored and upon which the applicant relied in support of its application was western slope streams. We held that because the resume "made reference to" the conditional decrees and "because the language of those conditional decrees was broad enough to encompass storage of western slope water in exchange for eastern slope water, the resume ... was sufficient to put interested persons on notice of the absolute storage rights sought by [the applicant].". *Id.* at 601.

In *Closed Basin*, 734 P.2d at 635, we held a resume for a water salvage project to be sufficient when the resume "adequately notified interested parties of the amount of the appropriation and that the appropriation would lower the water table a stated amount over a precisely described area," *id.* at 634, even though the resume did not specify the location of the well sites. That resume provided inquiry notice as to the "nature, scope, and impact of the proposed diversion." *Id.* at 635.

In *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546 (Colo.1989), the resume stated that the well water came from a source independent of the Arkansas River System but did not state that the water was nontributary. That resume informed the state engineer that the applicants sought a decree that the wells took their water from a source independent of the Arkansas River system and therefore provided notice that the Arkansas River Rules would not apply to their wells. Consequently, the state engineer could not apply those rules after the decree issued. *Id.* at 552. *See also Pueblo West Metro. Dist. v. S.E. Colorado Water Conservancy Dist.*, 717 P.2d 955 (Colo. 1986) (resume of application for change of point of diversion that did not mention two wells that had been used as undecreed

nearby alternate points of diversion for a ditch right was sufficient to describe the water right involved); *Danielson*, 698 P.2d at 246 (a resume describing an application as requesting a determination of a water right for "domestic, stockwatering, and irrigation purposes" did not provide notice that the applicant also sought judicial recognition of fish culture and storage uses). These cases illustrate that the inquiry notice standard applicable to determining the sufficiency of the resume notice required by section 37–92–302(3) focuses on whether the resume would alert interested parties about the nature, scope and impact of the proposed diversion.

█ The published resumes for Monaghan Farms' application satisfied this inquiry notice standard. Each resume set forth the contents of the application, including Monaghan Farms' name and address, a description of the wells and the land overlying the ground water to be pumped, the combined pumping rate and estimated annual diversions, and a request for a decree determining that the source of the water was nontributary. The February 26, 1987, resume caption for the second amendment to the application specifically noted that the application contained an alternative prayer concerning any not nontributary ground water to be withdrawn from the Denver aquifer. The alternative prayer, set forth in the resume, clearly stated Monaghan Farms' intention to seek a decree for any portion of the ground water to be withdrawn that was not nontributary, subject only to the replacement of stream depletions required by a statutorily prescribed augmentation plan.

The resumes taken together disclosed that Monaghan Farms sought an absolute decree for any not nontributary water to be withdrawn from the Denver aquifer, the feature of the decree that Denver now seeks to appeal. These resume notices were fully adequate to place all interested persons, including Denver, on notice of the nature, scope and impact of the proposed diversion.[8] It was then incumbent upon

---

8. Denver asserted to the water court that the

resume notices were inadequate. The water

Denver to file a statement of opposition if it contested any feature of the relief sought and to protest any ruling of the referee granting such relief. This it did not do.

■■ Denver's primary objection to the sufficiency of the resumes is that they did not specify the conditional nature of any determinations of rights to not nontributary ground water in the Denver aquifer. This objection parallels its substantive attack upon the original decree: that the water court granted an absolute decree instead of a conditional decree. Denver asserts that because, in its view, the water court could award only a conditional right, the resume must contain a request for a conditional right. This argument misconceives the purpose of the resume, which is to give notice of the nature, scope and impact of the decree sought, thereby enabling any interested person to file a statement of opposition and contest the factual or legal grounds for issuance of such a decree. The resume of the second amended application made clear that the applicant sought a decree without conditions other than the requirement for a court-approved plan for augmentation. This afforded any interested party the opportunity to file a statement of opposition and contend that under applicable law any decree to be issued must be conditional and subject to requirements of reasonable diligence.

Denver also objects to the uncertainty created by Monaghan Farms' alternative prayer, its request for a determination of a right to use not nontributary ground water in the event that the water court determined the ground water to be withdrawn from the Denver aquifer to be of that character. At the time of its application, Monaghan Farms took the position that the water to be pumped from the Denver aquifer was entirely nontributary, however, Monaghan Farms did not have comprehensive hydrological information because the filing of the application preceded the state

engineer's factual determination. Monaghan Farms therefore included the alternative prayer to cover the contingency that some or all of the water would be determined to be not nontributary. The alternative prayer notified interested parties about the possible not nontributary character of the ground water, and therefore allowed the water court to decree rights with respect to any portion of the water determined to be not nontributary.

■■ The alternative prayer was an appropriate manner to address the factual and legal uncertainties surrounding the application. An alternative prayer becomes appropriate when the nature of the water as nontributary or not cannot be determined definitively until after the application process begins. Furthermore, neither the statute nor our decisions address whether water rights concerning not nontributary ground water outside designated ground water basins are to be absolute or conditional prior to application of water to beneficial use. The alternative prayer, therefore, provided notice to interested parties of the relief sought, so that they could participate in the proceedings and litigate that issue. The alternative prayer also is consistent with C.R.C.P. 8(e)(2), which allows pleadings in the alternative.

The published resumes provided notice to Denver about the nature, scope, and impact of the proposed diversion. Having received adequate notice, Denver is bound by the original decree even though it failed to appear. *See Smith Cattle*, 780 P.2d at 551–52.

B.

Denver also asserts, in its response to Monaghan Farms' motion to dismiss for lack of subject matter jurisdiction, that section 37–92–304(9) and C.A.R. 4(a) do not divest this court of jurisdiction over this appeal because the original decree was

court held the notices sufficient, stating:
> [M]y opinion is that if this notice isn't good enough, I don't know what in the world notice would be, because it seems to me the notice in this cases [sic] has just been pretty much

excruciating, unless ... you are required to divine what the ultimate decision of this Court will be and publish that in the resume before the case begins.

void. Denver contends that the water court exceeded its jurisdiction, which rendered the original decree void. The water court awarded Monaghan Farms an absolute, rather than conditional, decree for the not nontributary water beneath its property. Denver asserts that not nontributary ground water outside designated ground water basins is subject to appropriation in the same manner as other water in or tributary to natural streams in the respect that only a conditional right may be decreed until such time as the water is put to beneficial use. Denver argues, therefore, that until not nontributary waters are put to beneficial use reasonable diligence requirements must be met to maintain those rights. Denver contends that the water court exceeded its statutory authority by decreeing Monaghan Farms an absolute water right, and consequently the decree is void for lack of subject matter jurisdiction. Furthermore, Denver asserts, the amended decree based upon the defective original decree is itself void. Questions of subject matter jurisdiction may be raised at any time, *Pueblo West Metro. Dist. v. S.E. Colo. Water Conservancy Dist.*, 717 P.2d 955, 957 (Colo.1986), so Denver asserts that it may challenge the original decree despite the failure to protest the referee's ruling as required by section 37–92–304(9) and the failure to appeal within the time permitted by C.A.R. 4(a).

Subject matter jurisdiction concerns "the court's authority to deal with the class of cases in which it renders judgment." *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 636 (Colo.1987) (quoting *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo.1981)); *People ex rel. Clinton*, 762 P.2d 1381, 1387 (Colo.1988). To determine whether a court has jurisdiction we must examine the nature of the claim and the relief sought. *In re Stroud*, 631 P.2d at 171. The water court has exclusive jurisdiction over water matters, § 37–92–203(1), 15 C.R.S. (1990), which include determination of rights to ground water from wells described in section 37–90–137(4). *See* § 37–92–302(2); *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990) (water

court must impose an augmentation plan on wells completed in the Dawson, Denver, Arapahoe, and Laramie–Fox Hills aquifers that withdraw not nontributary ground water, which implies water court jurisdiction). Monaghan Farms sought to withdraw ground water from the Denver aquifer under section 37–90–137(4), so determinations of rights to that ground water come under the water court's jurisdiction.

Denver does not argue that the water court could not decree rights to this not nontributary water. Instead, Denver objects to the type of rights decreed. Denver contends that the water court should have entered a conditional rather than an absolute decree for not nontributary ground water. This argument merely reiterates Denver's position that the water court applied the wrong standards and erroneously granted an absolute decree. In effect Denver attempts to recharacterize its substantive argument about the water court's ruling as a jurisdictional argument.

■ Denver cannot challenge the validity of the original decree in a collateral attack. The water court's purported failure to employ the proper standards for decreeing rights to not nontributary water does not void the original absolute decree. An erroneous judgment is within the court's subject matter jurisdiction. *See People ex rel. Clinton*, 762 P.2d at 1387; *Closed Basin*, 734 P.2d at 637; *Stiger v. District Court*, 188 Colo. 407, 409, 535 P.2d 508, 509 (1975). Judgments based upon erroneous applications of law are nonetheless valid until successfully challenged. *E.B. Jones Constr. Co. v. City & County of Denver*, 717 P.2d 1009, 1013 (Colo.App. 1986). If the water court erred in issuing an absolute rather than a conditional decree, this would simply be legal error and vulnerable to reversal upon appeal. *See In re Stroud*, 631 P.2d at 172. Such errors do not go to the jurisdiction of the court. *Id.* at 172 n. 8. The appropriate method for challenging the allegedly erroneous decision was to file a statement of opposition, protest the referee's ruling and then appeal the water court's decree within the time prescribed. Thus, the original decree, en-

tered within the water court's jurisdiction, even if wrong, is not subject to collateral attack. *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo.1989); *Closed Basin*, 734 P.2d at 637.

### C.

Denver argues that its statement of opposition and timely appeal of the amended judgment issued on December 23, 1988, *nunc pro tunc* April 29, 1987, permits it to challenge the original decree. The merit of Denver's argument depends upon the nature of the amendment. If the amendment disturbed or revised legal rights and obligations settled with finality by the previous judgment then Denver would have a new opportunity to appeal. *In re Marriage of Everhart*, 636 P.2d 1321, 1323 (Colo.App.1981); *see F.C.C. v. League of Women Voters*, 468 U.S. 364, 373–74 n. 10, 104 S.Ct. 3106, 3113–14 n. 10, 82 L.Ed.2d 278 (1984); *F.T.C. v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952); *Morrell v. Edwards*, 98 Nev. 91, 640 P.2d 1322, 1324 (1982). "However, if the rights of the appealing party are not materially affected by the amendment and the relief from judgment could have been sought prior to the amendment, the time for appeal is not extended." *Everhart*, 636 P.2d at 1323.

The amended application of December 30, 1985, and the published resume based on that application requested in paragraph 6 that the water court "determine that Applicant has the right to withdraw all of the legally available water lying below [the applicant's land]," stated that the applicant "estimates that it can economically recover up to a maximum of 2590.8 acre-feet annually from the Denver aquifer," and stated:

> Although Applicant has estimated the amount of water available for withdrawal from the subject aquifer based on the

best current estimates available of specific yield and saturated thickness of said aquifer, Applicant requests the right to revise these estimates based on new data, without the necessity of amending this application or republishing the same unless the new data indicates that Applicant is entitled to more than the total acre feet requested herein from the Denver aquifer.

Monaghan Farms moved to amend the original decree on September 30, 1987, approximately 150 days after it was issued. This motion was pursuant to paragraph 17 of the original decree, which permitted an application to amend the decree to reflect the state engineer's determination of facts concerning the total annual amounts of water available for withdrawal from the Denver aquifer.[9] The original decree limited the annual withdrawals to 2590.8 acre-feet, because that was the amount originally requested by the applicant. The state engineer later filed his determination of facts, pursuant to section 37–92–302(2), determining that 2742 acre-feet was available for withdrawal annually. That determination was to be considered by the water judge to be presumptively valid. § 37–92–305(6). The referee's ruling and the court's decree therefore created a procedure for modification of the annual withdrawals to give effect to the state engineer's determination after giving notice to all interested parties. The decree required Monaghan Farms to file a motion, serve the motion on each of the objectors in the original proceedings, and publish a resume. The decree stated that the motion, "if granted, shall result in the entry of an amended judgment and decree reflecting necessary and appropriate changes in numerical values but otherwise remaining in the form of this Ruling absent agreement of all of the Parties to any changes in form and this Court's acceptance thereof."[10] The only purpose for the amended decree was the increase of 151.2

---

**9.** C.A.R. 4(a)(3) states that the time for appealing the judgment recommences upon the ruling on a C.R.C.P. 59 motion to amend the judgment. However, Monaghan Farms' motion to amend under section 37–92–305(11) was not a C.R.C.P. 59 motion, so the time for appealing the original

decree did not recommence after the December 23, 1988, entry of the amended judgment.

**10.** Section 37–92–305(11), 15 C.R.S. (1990), authorizes the court to retain jurisdiction in order to amend the decree to adjust the permissible annual withdrawals to conform to actual aqui-

acre-feet in annual withdrawals to reflect the state engineer's determination of the amount available, as specifically authorized by the original decree.

The amended decree did not disturb the legal rights and obligations determined by the original decree. The original decree determined Monaghan Farms' right to all the Denver aquifer ground water underlying its property, reviewed the state engineer's factual determinations, and found no injury to owners and users of any vested water rights or decreed conditional water rights. The original decree also provided that Monaghan Farms' right to the not nontributary water was exempt from reasonable diligence requirements. The issues that Denver now raises were determined in the original proceedings. The amended decree merely increased the annual withdrawal amount to 2742 acre-feet per year, an additional 151.2 acre-feet per year; this increase manifested the state engineer's presumptively correct factual determinations as set forth in the original decree. The amendment did not alter previously adjudicated rights, so Denver has no right to appeal the original decree.

### D.

In the alternative, Denver claims the right to appeal the 151.2 acre-feet increase. However, Denver has not asserted error in the acceptance of the state engineer's presumptively correct factual determination that resulted in that increase. That is the only substantive change effected by the amended decree.

### IV.

For the foregoing reasons, we dismiss this appeal for lack of subject matter jurisdiction.

MULLARKEY, J., dissents and VOLLACK, J., joins in the dissent.

Justice MULLARKEY, dissenting:

In my opinion, the resumé notices published pursuant to Monaghan Farms' applications in this case were misleading and confusing, causing Denver not to oppose the application or amended applications. Thus, I would hold that the water court's decree granting to Monaghan Farms rights to the groundwater in this case is void. I would require Monaghan Farms to reapply for a determination of water rights in a manner that provided adequate notice to all parties as to the type of water claimed and as to the right to that water sought. Accordingly, I respectfully dissent.

Denver seeks review of the original decree of the District Court, Water Division No. 1 (water court), dated April 29, 1987, determining that the groundwater in the Denver aquifer was not nontributary and ruling that the water right was not subject to reasonable diligence requirements but was to be exercised only pursuant to a court-approved plan for augmentation under section 37–90–137(9)(c), 15 C.R.S. (1990). Denver seeks this appellate review even though Denver neither protested the water referee's original rulings nor appealed the original decree of the water court within the statutory time limit set forth in C.A.R. 4(a).

Appellate review of the original decree is not precluded if the resumé notices were insufficient under the Water Rights Act. *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546 (Colo.1989); *Stonewall Estates v. C.F. & I. Steel Corp.*, 197 Colo. 255, 592 P.2d 1318 (1979). To prove that the resumé notices were insufficient, Denver must show that the resumé notices did not put Denver on adequate "inquiry notice of the nature, scope, and impact of the pro-

---

fer characteristics. That section provides, in pertinent part:

The water judge shall retain jurisdiction as to determinations of ground water from wells described in section 37–90–137(4) as necessary to provide for the adjustment of the annual amount of withdrawal allowed to conform to actual local aquifer characteristics from adequate information obtained from

well drilling or test holes. Such decree shall then control the determination of the quantity of annual withdrawal allowed in the well permit as provided in section 37–90–137(4). Rights to the use of ground water from wells described in section 37–90–137(4) pursuant to all such determination shall be deemed to be vested property rights. . . .

posed" determination, *Closed Basin Land-owners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 634 (Colo. 1987); *Smith Cattle*, 780 P.2d at 552, based on the particular facts of this case. *Closed Basin*, 734 P.2d at 635; *Smith Cattle*, 780 P.2d at 552. If the resumé notices would cause confusion or were in any way misleading as to the type of water claimed or the nature of the right sought, the resumé notices were inadequate and the decree approved by the water court is void. *Closed Basin*, 734 P.2d at 634; *Pueblo West Metropolitan Dist. v. Southeastern Colorado Water Conservancy Dist.*, 717 P.2d 955, 958 (Colo.1986) ("*Pueblo West II*"); *Pueblo West Metropolitan Dist. v. Southeastern Colorado Water Conservancy Dist.*, 689 P.2d 594, 602 (Colo.1984) ("*Pueblo West I*").

The facts of this case are most closely analogous to *Stonewall Estates v. C.F. & I. Steel Corp.*, 197 Colo. 255, 592 P.2d 1318, where we held that a resumé was defective because it did not state that nontributary water was involved. We described the failure to mention the nontributary character of the water in *Stonewall Estates* as an omission of "material" information because, if the water were tributary (as interested parties were then entitled to assume), senior appropriators would not challenge the application in reliance on the tributary priority system's protecting their rights to the water. *Pueblo West II*, 717 P.2d at 958; *Pueblo West I*, 689 P.2d at 602; *Stonewall Estates*, 592 P.2d at 1320, 197 Colo. at 258–59; *cf. Smith Cattle*, 780 P.2d 546 (resumés that did not identify waters as nontributary were nevertheless sufficient where complainant's contention was that Arkansas River Rules should apply to the water at issue and the complainants were advised adequately that the applicants sought a decree that the water came from a source independent of the Arkansas River system).

In this case, Denver seeks to assert that not nontributary groundwater in the Denver aquifer is subject only to a conditional right. The fact that Monaghan Farms sought rights to not nontributary water, therefore, was material information. For Denver to be put on adequate notice to assert its interest, the resumé notices must have specified clearly that the water in the Denver aquifer for which the right was sought was not nontributary groundwater. In my opinion, the resumé notices published pursuant to Monaghan Farms' application and amended applications did not provide such notice.

In none of the resumé notices is the source of water described as anything but "nontributary." In the May, 1985 resumé, paragraph 3 read as follows:

Source of water:

Nontributary Denver, Arapahoe and Laramie–Fox Hills Formations.

Any impact on a natural stream from the pumping of these wells will be *de minimis*.

Paragraph 3 of the December, 1985 resumé provided in relevant part:

Source of water:

Nontributary Denver aquifer. Any impact on a natural stream from the pumping of these wells will be *de minimis*, and withdrawal of groundwater from the Denver aquifer as requested herein will not deplete the flow of any natural stream at an annual rate greater than one-tenth of one percent (.1%) of the annual rate of withdrawal. The groundwater in the Denver aquifer involved in this Application is "nontributary groundwater" as defined in C.R.S. section 37–90–103(10.5)....

The February, 1986 resumé did not amend paragraph 3 and no "source of water" paragraph was published. Thus, a party seeking to assert that only conditional rights could be awarded for not nontributary groundwater who read this paragraph of the resumé notices would be misled to believe that the applicant sought only rights for nontributary groundwater.

I emphasize that the location of the water specified in the above descriptions of the source of water was adequate. It was the description of the nature of the water as nontributary that was misleading and confusing. This distinguishes the present case from *Pueblo West I*, upon which the

majority relies. In *Pueblo West I*, the protestants argued that resumés were insufficient because the water came from a source different from that specified in the description of the source of water. *Pueblo West I*, 689 P.2d at 598–99. We held that the protestants had failed to carry their burden of proving that a genuine issue of fact existed on the notice issue. *Pueblo West I*, 689 P.2d at 601. We distinguished *Stonewall Estates* on the grounds that "*Stonewall Estates* involved a serious omission of *material* information from the application and resumé, whereas in the instant case neither the application nor the resumé prepared from it was in any way misleading as to the nature of the conditional water storage rights sought to be made absolute." *Pueblo West I*, 689 P.2d at 602 (emphasis added). We did not discuss any impact which the assertedly incorrect description of the source of water had in discouraging protestants from challenging the applications. The assertedly incorrect description of the source of water in *Pueblo West I*, therefore, was not shown to be material information. In the case now before us, on the other hand, the distinction between nontributary and not nontributary was material. Monaghan Farms' failure to distinguish adequately between nontributary and not nontributary water caused Denver not to oppose the application.[1]

The case captions in the resumé notices also were confusing and misleading. The case caption in the May, 1985 resumé simply was, "Application for Underground Water Rights From Nontributary Sources In *ADAMS COUNTY*." (Emphasis in original.) The case caption for the December, 1985 resumé was, "Amended Application for Underground Water Rights from Non-

tributary Sources, *IN ADAMS COUNTY*." (Emphasis in original.) The February, 1986 resumé amended the case caption to read, "Amended Application for Nontributary Groundwater Rights in the Nontributary Denver Aquifer, or in the Alternative for Nontributary Groundwater Rights in the Nontributary Denver Aquifer and Quantification of Amount and Depletive Effects of Withdrawal of Not Nontributary Groundwater in the Denver Aquifer." The amended case caption for the February, 1986 resumé was the only caption that mentioned not nontributary groundwater and that reference was ambiguous at best. Although this amended case caption mentioned not nontributary groundwater in the Denver aquifer, the caption did not indicate adequately that Monaghan Farms sought water rights with respect to the not nontributary groundwater.

The only mentions of a claim for rights to not nontributary water were in the alternative prayers for relief in the December, 1985 and February, 1986 resumés, near the end of the body of those resumés. In my opinion, this did not provide adequate notice of the critical distinction between seeking rights to nontributary and not nontributary water. This distinction was material information that caused Denver not to oppose the application in this case.

The nature of water rights in not nontributary groundwater in the Denver aquifer is an important and undecided question. As the majority points out, "neither the statute nor our decisions address whether water rights concerning not nontributary ground water outside designated ground water basins are to be absolute or conditional prior to application of water to bene-

---

1. The materiality of the confusing and misleading information in the resumé notices also distinguishes the present case from the other cases cited by the majority. *See Closed Basin*, 734 P.2d at 635 (holding that resumé notices that did not specify location of wells and amount of water to be withdrawn by each well provided adequate notice given the nature of the project, which called for the construction of over 100 wells in an area containing over 100,000 acres); *Pueblo II*, 717 P.2d at 958 (holding that a resumé that failed to specify two wells as alternate points of diversion provided adequate notice

because "the omission of the two wells from the resumé notice was not sufficiently material to deprive the water court of jurisdiction"); *compare Danielson v. Jones*, 698 P.2d 240 (Colo. 1985) (holding that a resumé notice that did not indicate that the applicant sought a right that authorized the use of water for fish culture and storage provided insufficient notice in the face of a challenge by the state engineer who presented testimony that the well to be used to supply water for those purposes would divert water away from an already overappropriated stream system).

ficial use." *Maj. op.* at 17. Because the question is so important, I am unwilling to agree with the majority that Denver's opportunity for judicial review is foreclosed on the basis of the misleading resumés filed in this case. For these reasons, I respectfully dissent.

I am authorized to state that Justice VOLLACK joins in this dissent.

