[No. 8141.]

## COLBURN V. GILCREST.

1. NOTICE—*Defined.* Whatever is sufficient to put a party upon inquiry is generally regarded as notice of all facts that reasonably diligent inquiry would have disclosed. (94.)

Ignorance attributable to a failure to make inquiry is deemed equivalent to knowledge. (96.)

Each case must be governed by its own circumstances. (96.)

2. —— *Possession of lands.* Plaintiff received and placed upon record a conveyance, which, by mistake of the scrivener, failed to describe the premises which he had purchased.

A year later the defendant levied upon the premises actually purchased, an execution against the former owner, grantor of plaintiff.

Plaintiff immediately upon receiving the conveyance assumed possession, paid the taxes, took out insurance, rented the premises, collected the rents, and during all the time openly treated the property as his own.

Defendant's levy was made without any prior inquiry.

*Held* that though the premises were unoccupied on the day of the levy, the prior open possession of plaintiff put the defendant upon inquiry, and plaintiff having received from the former proprietor, defendant in the execution, a conveyance correctly describing the premises the title was quieted in him. (94-96.)

*Error to Weld District Court.*   Hon. ROBERT C. STRONG, Judge.

Mr. HARRY E. KELLY and Mr. CHARLES H. HAINES, for plaintiff in error.

Mr. JOHN T. JACOBS, for defendant in error.

SCOTT, J., delivered the opinion of the court.

Action to quiet title.   On the 19th day of October, 1907, Frank J. McCarthy, who was the owner of Lot 15, Block 21, in the Town of Gilcrest, Weld County, Colorado, sold said premises to W. K. Gilcrest for a sufficient and valuable consideration, and executed and delivered to said Gilcrest his deed of conveyance, intending to thereby convey said premises.   This deed was duly and promptly recorded.

The deed, however, by mistake, purported to convey Lot 15 in Block 22, instead of Block 21.   McCarthy did not at the time own property in Block 22.

On December 15th, 1908, the First National Bank of Denver, caused to be filed a certified transcript of judgment against the said McCarthy, for record with the county clerk and recorder of Weld County, and on the same day caused an execution to issue on the judgment, and a levy to be made on the premises.

December 18th, 1908, a correction deed for the premises sold by McCarthy to Gilcrest, dated Dec. 5th, 1908, was duly filed for record.

The premises were sold under the execution and levy on April 1st, 1909, to the plaintiff in error, E. A. Colburn, who afterward, and on the 16th day of May, 1913, received a sheriff's deed therefor. Colburn was the real owner of the judgment which was assigned by the bank to him on June 12th, 1913.

The sole question at issue is as to the sufficiency of notice to Colburn at the time of the levy. It is conceded that by reason of the error in description, the original deed from McCarthy to Gilcrest did not constitute constructive notice of the sale to Gilcrest, so that in this case Gilcrest must rely upon possession as constituting sufficient notice.

The general rule as to the character of possession sufficient, in such case, to put an interested person on his inquiry, was announced by this court in *Yates v. Hurd,* 8 Colo. 343, 8 Pac. 575, to be, " 'that open, notorious and exclusive possession of real estate, under an apparent claim of ownership, is notice to those who subsequently deal with the title of whatever interest the one in possession has in the fee, whether such interest be legal or equitable in its nature.' Wade, Notice, Sec. 273, and cases cited. But the theory upon which the foregoing doctrine rests is that such possession is sufficient to put the purchaser upon inquiry, and thus lead to a disclosure of the true state of the title."

Knowledge of circumstances may be equivalent to actual notice. *Riethmann v. Godsman,* 23 Colo. 208, 46 Pac. 684.

Whatever is notice sufficient to put an interested party upon inquiry, is generally regarded as good notice of all those matters which an inquiry prosecuted with reasonable diligence, would have disclosed.

There is no testimony in this case to indicate that the plaintiff in error, either in person or by agent or attorney, made any inquiry whatsoever, or that he saw or visited the premises, at any time prior to the filing of the certified transcript of judgment, the issuance of the execution, or making of the levy.

Indeed, this suggestion seems to be negatived by a showing that the attorney of Colburn did visit the premises on the same day, but after the levy was made, to examine the same and to ascertain the probable value thereof.

The property consists of the lot on which there was a large frame store building, used for mercantile purposes alone, and never occupied as a dwelling. The testimony shows that immediately after receiving the deed, Gilcrest took possession, took out an insurance policy, placed a new roof on the building, built a chimney, painted out a sign on the front and side of the building, paid the taxes for the year 1907,—being the year of the purchase, and for each succeeding year,—collected the rents, and in every respect treated the property as his own. The building had been rented by Gilcrest practically all the time since his purchase, though several of his tenants had occupied it during that period, and there had been vacancies between tenancies, extending from a week to a month. The building was without a tenant on the day of the levy, and had been for a month or two, but was soon thereafter leased by Gilcrest to another tenant.

There was no concealment of any one of all these acts of ownership and possession, continuing for the full period from the date of the purchase on October 19th, 1907, to the date of the levy on December 15th, 1908. Nor did Gilcrest fail to record what he believed to be his valid deed immediately after receiving it.

His every act in this respect was in the open , was notorious, and was undisputed.

Not only does the plaintiff in error fail to show that he made any inquiry concerning the claim and exercise of ownership by Gilcrest, but fails to show that he or his agent was not possessed of such knowledge.

While such latter showing may not be essential to the establishment of his claim of innocent purchaser, yet under

the circumstances of this case it would have added to the legal presumption of good faith. The testimony is sufficient to justify the assumption that if the plaintiff in error or his attorney, had made inquiry of Gilcrest, or of any resident of the little town, prior to making the levy, he could have ascertained the fact of these acts affecting possession. But this was not done, and the attorney first caused the levy to be made, and afterward, and on the same day called upon Gilcrest to point out the property, and asked him as to the value of it. He then told Gilcrest that he had levied on the property.

Counsel now complains that at the time, Gilcrest did not state that he was the owner or in possession of the property.

This may have been important if this conversation had occurred prior to the making of the levy. But certainly it could have no bearing after the plaintiff in error had made the levy. The attorney did not ask Gilcrest as to whether or not he was in possession, or claimed ownership, as was his duty if the information was important or desired, and we cannot see why the plaintiff was obligated to volunteer such information after his title had been so attacked in a legal proceeding.

It is natural that in this class of cases, and as it may be related to the question of notice, each case must be governed by its own peculiar circumstances, and be determined by the rule that if the purchaser or claimant, as against an unrecorded deed, had actual knowledge, or actual notice of such facts and circumstances, as by the exercise of due diligence would have led him to knowledge of the rights of an adverse claimant, if, under such circumstances he fails to make inquiry, then the ignorance of such purchaser is the result of such gross and culpable negligence as will hold him to have had knowledge.

As to the character of possession which is sufficient to

constitute such notice as will put a subsequent purchaser upon inquiry, it was said in the leading case of *Simmons Creek Coal Co. v. Doran,* 142 U. S. 417, 35 L. Ed. 1063, 12 Sup. Ct. 239:

"Actual and unequivocal possession is notice, because it is incumbent on one who is about to purchase real estate to ascertain by whom and in what right it is held or occupied; and the neglect of this duty is one of the defaults which, unexplained, is equivalent to notice. 2 Lead. Cas. Eq. 180; *Landes v. Brant,* 10 How. 348; *McLean v. Clapp,* 141 U. S. 429, 436; *French v. Loyal Company,* 5 Leigh, 627 641; *Western Mining Company v. Peytona Coal Company,* 8 West Va. 406, 441; *Core v. Faupel,* 24 West Va. 238; *Morrison v. Kelley,* 22 Ill. 610. 'Possession,' said Walker, J., in the case last cited, 'may be actual or constructive; actual, when there is an occupancy, such as the property is capable of, according to its adaptation to use; constructive, as when a person has the paramount title, which, in contemplation of law, draws to and connects it with the possession. But to be adverse it must be a *pedis possessio,* or an actual possession.' In *Ewing v. Burnett,* 11 Pet. 41, 53, it was held that neither actual occupancy, nor cultivation, nor residence was necessary to constitute actual possession; that where the property is so situated as not to admit of any permanent useful improvements, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property he did not claim, such possession will create a bar under the statute of limitations; that what acts may or may not constitute a possession are necessarily varied, and depend to some extent upon the nature, locality and use to which the property may be applied, the situation of the parties, and a variety of circumstances which have necessarily to be taken into consideration in determining the question. And so possession of an

improved portion of a tract of land, under a conveyance in fee of the whole, is construed to be co-extensive with the grant. And where a party purchases land adjoining a tract of which he is already in the occupancy, he will be considered as at once, in point of law, in the possession of the newly-acquired tract, when the latter is vacant, or at least not held under an adverse possession."

Again, and in the same case:

"Lord Hardwick observed in *Le Neve v. Le Neve,* Amb. 436; 3 Atk. 646; 1 Ves. Sen. 140: 'That the taking of a legal estate, after notice of a prior right, makes a person a *mala fide* purchaser;' and the notes to that case in Leading Cases in Eq. 109, discuss at length the doctrine of knowledge, actual notice, express or implied, and constructive notice, with abundant citation of authority. The conclusion of the American editor is that actual notice embraces all degrees and grades of evidence, from the most direct and positive proof, to the slightest circumstances from which a jury would be warranted in inferring notice, while constructive notice is a legal inference from established facts, and like other legal presumptions, does not admit of dispute."

The opinion further declares:

"Vice-Chancellor Wigram in *Jones v. Smith, supra,* laid it down that cases in which constructive notice had been established, resolved themselves into two classes; first, those in which the party charged had actual notice that the property in dispute was in some way affected, and the court has thereupon bound him with constructive notice of facts to a knowledge of which he would have been led by an inquiry into the matters affecting the property, of which he had actual notice; and, secondly, those where the court has been satisfied that the party charged had designedly abstained from inquiry for the purpose of avoiding notice. If there is not actual notice that the property is in some way affected so that the case does not fall within the first class, and no

fraudulent turning away from a knowledge of facts which the *res gestae* would suggest to a prudent mind or gross and culpable negligence, so as to bring it within the second, then the doctrine of constructive notice would not apply."

It appears that in this case neither the plaintiff in error, nor any person acting for him, visited the town of Gilcrest prior to the levy, or made any examination of, or inquiry concerning the property, but that the attorney first proceeded to the county seat, filed the transcript of judgment, caused the execution to be issued and the levy made, prior to going to the town of Gilcrest to make investigation of the property. So that in so far as the record discloses he made no effort to ascertain the fact as to possession or occupancy prior to the levy, and if he did not then know the existing facts, it was because of his own neglect or refusal to make the inquiry. He seems to have turned away from a knowledge of facts which would naturally be suggestive to a prudent mind.

The doctrine announced in *Doran* case was approved and the case cited *Davis v. Pursell*, 55 Colo. 287, 134 Pac. 107.

It was said in *Muller v. Blake*, 167 Ill. 150, 47 N. E. 355:

"There are different kinds of possession, and different modes of being in possession, of real property. Where a person owns 160 acres of land, and resides upon and cultivates the land, he is in possession; but he is not required to reside on the land, to be in possession. He may rent the land to a tenant, and reside away from the property, and still be in possession. The same is true in regard to a town lot. A person may improve a part of a tract of land, and the improvement of a part, with a deed for the entire tract, will constitute possession of the whole. Actual residence is not required, to constitute possession. *Coleman v. Billings*, 89 Ill. 183. In *Hubbard v. Kiddo*, 87 Ill. 578, it was held not necessary that land should be inclosed with a fence, or that

a fence should be erected thereon, or that it should be reduced to cultivation, to constitute possession. Here, where Edward Muller improved his property by erecting buildings upon it, he was in the possession of the property, and he was not required to reside on it, to retain that possession; but, if he saw proper, he was at liberty to rent the property to any tenant he chose, and the possession of the tenant would, in contemplation of law, be the possession of the landlord."

The plaintiff in error does not seriously question but that the acts and conduct of Gilcrest constituted possession, but insists that because of the fact that the building was not occupied on the particular day of the levy, by reason of the vacation of the premises by a former tenant of Gilcrest, there was no possession either by Gilcrest or his tenant.

A temporary vacancy caused by the outgoing of a tenant cannot of itself destroy a long asserted right, coupled with the fact of prior actual possession by tenant for so long a period.

But this question has been decided by the Supreme Court of Illinois, in the case of *Thomas et al. v. Burnett*, 128 Ill. 37, 21 N. E. 352, 4 L. R. A. 222, a very similar case to the one at bar, wherein the court said:

"It is, however, said that there was no tenant in actual possession at the time of the levy of the attachment, and therefore the plaintiff in error was not chargeable with notice of the unrecorded deed. The tenant's possession of land is that of his landlord. The Jordans occupied the land up to August, 1883, and this was notice to the world of Mrs. Burnett's title, to all intents, as if she had occupied it. Actual residence is not essential to continuous possession. If the party is in actual possession of the land, and there are continuous acts of ownership, it is sufficient. *Coleman v. Billings et al.*, 89 Ill. 128; *Ford v. Marcall*, 107 *id.* 136."

No authority has been cited that appears to sustain the contention of the plaintiff in error upon this point.

The trial judge had the witnesses before him; it was within his province to pass upon their credibility and the weight of the evidence, and we are of the opinion that there was sufficient evidence to support his findings, and these will not be disturbed.

Counsel for plaintiff in error cite *Western Chemical Co. v. McCaffrey,* 47 Colo. 397, 107 Pac. 1081; *Houlahan, v. Finance C. M. Co.,* 34 Colo. 365, 82 Pac. 484; *McMurtrie v. Riddell,* 9 Colo. 497, 13 Pac. 181, and *Gates Iron Works v. Cohen,* 7 Col. Ap. 341, 43 Pac. 667, as tending to support their contention. We have carefully examined these cases and find nothing therein, which in our opinion is in conflict with the views herein expressed.

The judgment is affirmed.

GABBERT, C. J., and GARRIGUES, J. concur.

Decided June 7, A. D. 1915. Rehearing denied October 4, A. D. 1915.