The BOARD OF COUNTY COMMIS-
SIONERS OF the COUNTY OF ARAP-
AHOE, a Colorado county, Plaintiff–
Appellant,

v.

E.C. COLLARD; Charles Richard Col-
lard; David J. Collard; Thomas E. Col-
lard; Collard Land Company; Union
Park Pool Association; Joseph P. Vad-
er; Louis F. Van Tuyl; Raymond P.
Van Tuyl; Joan Blumel; and all un-
known persons who may claim an in-
terest in the subject matter of this ac-
tion, Defendants–Appellees.

No. 91SA178.

Supreme Court of Colorado,
En Banc.

March 23, 1992.

Rehearing Denied April 13, 1992.

Vranesh and Raisch, P.C., John R.
Henderson, Paul J. Zilis, Brian M. Nazare-
nus, Boulder, for plaintiff-appellant.

Brownstein, Hyatt, Farber & Madden,
P.C., Charles B. White, Wayne F. Forman,

Denver, for defendant-appellee Joseph P. Vader.

Stephen A. Hess, Aurora, for remaining defendants-appellees.

Chief Justice ROVIRA delivered the Opinion of the Court.

The plaintiff, Board of County Commissioners of the County of Arapahoe (Arapahoe), challenged the validity of a 1974 decree of absolute water rights granted by the district court, Water Division 4, in Case No. W–1987 (W–1987 decree or 1974 court) to defendants or their predecessors in interest (appropriators). The 1991 court[1] granted the appropriators' motion to dismiss, which it treated as a summary judgment motion, and denied Arapahoe's request for summary judgment. In making its determination, the 1991 court found that the resume notice for those water rights granted by the W–1987 decree was adequate and the 1974 court had subject matter jurisdiction when it granted the decree. We affirm.

I

In September 1973, the appropriators applied for a determination of water rights in Lottis Creek and its tributaries Cross Creek, Cameron Creek, and Union Creek, all of which are tributary to the Taylor River and located primarily in Gunnison County, Colorado. The appropriators owned land and held government permits so that the streams in which they were seeking determinations of water rights flowed through or bordered properties owned or leased by them. The appropriators had used their lands since the early 1900's for agricultural, livestock and recreational purposes. In order to continue their beneficial use of the waters and protect the waters in the streams and lakes claimed by them although they had not actually diverted the waters, the appropriators sought a decree determining water rights. In their application concerning surface water rights, the appropriators stated that the use of the water claimed was nonconsumptive, that they were not claiming either exclusive use or consumptive use of the water, and they only required that the water in the streams not be diminished in quantity below that claimed nor diminished in quality from its natural and historic condition.

Resume notice of the application was published in October 1973 by the water clerk for Division 4 in the following form:

Pursuant to C.R.S. 148–12–18, you are notified that the following is a Resume of all applications filed in the office of the Water Clerk during the month of September, 1973.

. . . .

13. Case No. W–1987, JOE VADER, E.C. COLLARD, LOUIS F. VAN TUYL, RAYMOND P. VAN TUYL AND JOAN BLUMEL, d/b/a UNION PARK POOL ASSOCIATION, c/o Klingsmith & Russell, 110 East Virginia Avenue, Gunnison, Colorado 81230, Application for Water Right, LOTTIS CREEK, TOGETHER WITH ITS TRIBUTARIES CROSS CREEK, CAMERON CREEK AND UNION CREEK, described as: mouth of Lottis Creek at its confluence with the Taylor River is situate in the SW¼ NE¼, Section 2, Township 15 South, Range 83 West, 6th P.M., from whence the NE corner of said section bears North 45 degrees East 2,750 feet; decree for 60.0 c.f.s. absolute, with priority date of August 1, 1910, for stockwatering, recreational, fish culture, wildlife procreation and heritage preservation purposes. Gunnison County.

The United States of America opposed the application, claiming possible impairment of federal rights.[2] The Colorado Riv-

---

1. The 1991 challenge to the decree in case W–1987 was also brought in Water Division 4 of the district court. Therefore, the court granting the decree in case W–1987 will be referred to throughout this opinion as the 1974 court and the court deciding the underlying case to this appeal will be referred to as the 1991 court.

2. The United States of America filed a statement of opposition arguing that, should the determination of rights requested by the appropriators be granted, the appropriators' "proposed developments may violate the water interests of the United States of America appurtenant to acquired National Forest lands under the doctrine

er Water Conservation District entered an appearance in the case and argued that the water court did not have authority to enter a decree for beneficial use claimed by the applicants unless water was physically diverted from the channel of the stream.[3]

In 1974, the referee for Water Division 4, after finding that a right does exist to obtain a decree for minimum stream flow maintenance [4] and that the appropriators had applied the water to beneficial use, granted an "ABSOLUTE DECREE for the use and benefit of the parties lawfully entitled thereto, for an amount of water not to exceed 60 c.f.s. for stockwater, recreation, fish culture, wildlife procreation and heritage preservation with an appropriation date of August 1, 1910." In the absence of any protest to the referee's ruling, the water judge approved the ruling and made it the final judgment and decree of the water court. No appeal was taken by any party.

Arapahoe is a holder of junior decreed water rights in the involved drainage and an applicant for determination of other water rights. In January 1986, a third party filed an application for determination of water rights, requesting a decree concerning diversions from the Taylor River and its tributaries. Arapahoe subsequently purchased an interest in this application.

In 1988, Arapahoe also filed an application for determination of water rights requesting in part a decree based on diversions from the Taylor River and its tributaries, including Lottis Creek.

In 1990, Arapahoe commenced this action requesting that the water court vacate the W–1987 decree. Arapahoe claimed that the water rights decreed in Case No. W–1987 are riparian water rights which are not recognized by law and, therefore, the 1974 court lacked subject matter jurisdiction to issue the decree. Arapahoe further alleged that the rights granted in the W–1987 decree are void or, alternatively, voidable and unenforceable because the resume notice was insufficient, resulting in a failure to obtain personal jurisdiction over Arapahoe and all others who were without actual notice.[5]

Subsequently, the appropriators filed a motion to dismiss Arapahoe's complaint. The appropriators asserted that Arapahoe, as a county, and not a home rule county or municipality, lacked authorization to appropriate water and obtain water right decrees. The water court could not, therefore, vacate the W–1987 decree in order to allow Arapahoe to seek water rights. Furthermore, the appropriators claimed that the statute of limitations, section 37–92–

---

of prior appropriation and appurtenant to reserved National Forest lands under the doctrine of reserved rights. The rights prayed for in the instant applications may impair, *inter alia,* Federal rights to such quantities of water as are reasonably necessary to develop, conserve and manage Fish and Wildlife resources on the affected lands." The 1974 court granted the appropriators' decree "subject to all such rights of the United States of America in the subject sources, including reserved rights, as are now or will hereafter be determined by law."

**3.** Because the record from the 1974 proceeding is not included in the record on appeal, the nature of the Colorado Water Conservation District's argument is derived from the 1991 water court's findings of fact.

**4.** Also referred to as in-stream flow rights, the holder of minimum stream flow rights has the right to preserve and keep a minimum flow of water in the stream for the purposes claimed without any requirement of diversion. This type of appropriation prevents upstream appro-

priators from dewatering the stream in the area of granted in-stream flow rights. *See Colorado River Water Conservation Dist. v. Colorado Water Conservation Bd.,* 197 Colo. 469, 476, 594 P.2d 570, 574 (1979). *See also* 2 G. Vranesh, *Colorado Water Law* 701 (1987).

**5.** In its complaint, Arapahoe set forth four claims for relief. Arapahoe's third and fourth claims for relief were alleged in the alternative to the first two claims. By these claims, Arapahoe sought a declaratory judgment to determine the amount of water necessary for beneficial use under the W–1987 decree and to equitably determine a means of diversion for the W–1987 rights. There is, however, no need to address the third and fourth claims because Arapahoe's motion for summary judgment which was denied by the water court and which forms the basis for this appeal only addresses the first two claims for relief. Although the third and fourth claims were also dismissed by the water judge with prejudice, Arapahoe has not appealed their dismissal.

304(10), 15 C.R.S. (1990),[6] bars Arapahoe from seeking to modify or vacate a judgment entered 17 years prior. Additionally, the appropriators argued that the doctrine of res judicata bars relitigation of the validity of the rights adjudicated by the W–1987 decree because the 1974 court determined the validity of the rights ultimately decreed and concluded that the water rights were valid despite the filing of objections by the United States of America and the entry of an appearance by Colorado River Water Conservation District.[7]

Arapahoe then filed a motion for partial summary judgment on its subject matter jurisdiction and inadequate resume notice claims. The 1991 court denied Arapahoe's summary judgment motion. Treating the appropriators' motion to dismiss as a motion for summary judgment, the water court dismissed Arapahoe's complaint with prejudice after finding that the 1973 application claimed in-stream flow rights, that the W–1987 decree did not grant a riparian right, and that the 1974 court had subject matter jurisdiction. The 1991 court, relying on *Monaghan Farms, Inc. v. City & County of Denver*, 807 P.2d 9 (Colo.1991), also found that the resume notice was adequate and "sufficient for the subject application," because it put Arapahoe on inquiry notice. Accordingly, the resume notice conferred personal jurisdiction. Arapahoe was, therefore, bound by the W–1987 decree and barred by the doctrine of res judicata from attacking that decree.

On appeal, Arapahoe argues that the 1991 court erred in ruling that the decree of water rights in W–1987 is not void for lack of subject matter jurisdiction or because of inadequate resume notice. We are of a contrary view and, therefore, affirm the order of the water court.

## II

■■■ We first address the subject matter jurisdiction of the 1974 water court to grant the decree in W–1987 since defects in subject matter jurisdiction can be raised at any time. *Monaghan Farms, Inc. v. City & County of Denver*, 807 P.2d 9, 18 (Colo. 1991). Arapahoe asserts that the W–1987 decree is void because the water rights adjudicated were riparian, and because such rights are forbidden and void in Colorado, the court lacked subject matter jurisdiction to enter such a decree. We agree with the 1991 court that the rights adjudicated in the W–1987 decree are not riparian, but in-stream flow rights and, if the 1974 court did err by adjudicating private in-stream flow rights, that does not affect the court's subject matter jurisdiction.

## A

■■■ Colorado has never recognized riparian water rights. *Colorado River Water Conservation Dist. v. The Colorado Water Conservation Bd.*, 197 Colo. 469, 476, 594 P.2d 570, 574 (1979) (noting that riparian rights remain "forbidden" after enactment of Senate Bill 97, Colo.Sess. Laws 1973, ch. 442, at 1521); *Coffin v. Left Hand Ditch Co.*, 6 Colo. 443, 447 (1882) ("[T]he common law doctrine giving the riparian owner a right to the flow of the water in its natural channel upon and over his lands, is inapplicable in Colorado."). A riparian right derives from ownership of the land abutting the water source while an appropriation right derives from applica-

---

6. This section refers to judgments determining water rights and provides:

  [S]ubstantive errors therein may be corrected by the water judge on the petition of any person whose rights have been adversely affected thereby and a showing satisfactory to the water judge that such person, due to mistake, inadvertence, or excusable neglect, failed to file a protest with the water clerk within the time specified in this section. *Any petition referred to in the preceding sentence shall be filed with the water clerk within three* *years after the date of the entry of said judgment and decree.* (Emphasis added.)

7. Specifically, the appropriators stated that the doctrine of res judicata should be applied to bar these claims because Arapahoe, by virtue of the resume notice, was made a party to case W–1987 and the same issue as that raised here—the validity of the rights sought—was specifically, fully and fairly litigated and a final judgment was rendered in case W–1987. *See Pomeroy v. Waitkus*, 183 Colo. 344, 349–50, 517 P.2d 396, 399 (1973).

tion of the water to beneficial use. Use of the water is not necessary in order to maintain a riparian right. *See* G.E. Radosevich, K.C. Nobe, D. Allardice, C. Kirkwood, *Evolution and Administration of Colorado Water Law: 1876–1976* 16, 19 (1976); *see also* § 37–92–103(4), 15 C.R.S. (1990) (defining beneficial use as the use of an appropriate and reasonable amount of water to accomplish without waste the purpose for which the appropriation is made and not containing any requirement for water diversion in order to prove beneficial use in Colorado).

The 1991 water court held that the right decreed was not a riparian right but an instream flow water right. It arrived at this conclusion based upon its analysis of Senate Bill 97 as enacted in 1973, and the 1974 water court's interpretation of that bill.

The act commonly referred to as Senate Bill 97, Colo.Sess.Laws 1973, ch. 442, at 1521,[8] was enacted in July 1973 (before the appropriators filed their application for determination of water rights in September 1973), and removed the requirement that one must divert water in order to show a beneficial use which constitutes a requisite for appropriation. The changes made by Senate Bill 97 relating to the definition of appropriation and beneficial use read as follows:[9]

148–21–3. Definitions.

(6) "Appropriation" means ~~the diversion of a certain portion of the waters of the state and~~ the application of ~~the same~~ A CERTAIN PORTION OF THE WATERS OF THE STATE to a beneficial use.

(7) "Beneficial use" is the use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the ~~diversion~~ APPROPRIATION is lawfully made and, without limiting the generality of the foregoing, shall include the impoundment of water for recreational purposes, including fishery or wildlife. FOR THE BENEFIT AND ENJOYMENT OF PRESENT AND FUTURE GENERATIONS, "BENEFICIAL USE" SHALL ALSO INCLUDE THE APPROPRIATION BY THE STATE OF COLORADO IN THE MANNER PRESCRIBED BY LAW OF SUCH MINIMUM FLOWS BETWEEN SPECIFIC POINTS OR LEVELS FOR AND ON NATURAL STREAMS AND LAKES AS ARE REQUIRED TO PRESERVE THE NATURAL ENVIRONMENT TO A REASONABLE DEGREE.

S.B. 97, Colo.Sess.Laws 1973, ch. 442 at 1521. The 1974 water court interpreted these statutory changes to mean that all appropriators, not only the state, could claim in-stream flow rights. In arriving at this conclusion, the court relied on the change in the statute that deleted the requirement of diversion for *all* appropriators. The 1974 court also noted, without citation, that numerous cases allow instream appropriation. Lastly, the court stated that the wording in the amended statute enunciates a new right to the state but does not suggest that the right is exclusive to the state only. Based on this interpretation, the 1974 court ruled that private parties are eligible for minimum stream flow maintenance rights. The 1991 court found that this interpretation was reasonable, but that, even if the 1974 court erred in approving private in-stream flow rights, its decree was not void.

Arapahoe asserts that the 1974 court incorrectly interpreted the language of Senate Bill 97 (codified as amended at § 37–92–103, 15 C.R.S. (1990)). Arapahoe argues that only the Colorado Water Conservation Board, on behalf of the State of Colorado, is entitled to acquire minimum in-stream flow rights.

While Arapahoe makes some compelling arguments that the 1974 court misconstrued Senate Bill 97 and erred in recogniz-

---

**8.** Through enactment of Senate Bill 481 in 1979, the legislature amended the language in Senate Bill 97. *See infra,* n. 10. These changes are currently codified at section 37–92–103, 15 C.R.S. (1990).

**9.** Capital letters indicate new material, and dashes through words indicate deletions.

ing private in-stream flow rights,[10] we find it unnecessary to address the propriety of the interpretation in order to determine whether the 1974 court had subject matter jurisdiction to issue the W–1987 decree.

## B

■ We do not agree that the issuance of such a decree constitutes an act in excess of the water court's jurisdiction. Arapahoe's argument in this case is similar to the argument in *Monaghan Farms v. City & County of Denver*, 807 P.2d 9 (Colo.1991). In that case, Denver argued that the water court lacked subject matter jurisdiction to issue an absolute decree for a right to "not nontributary water" because only conditional decrees are recognized for "not nontributary waters." As we found in *Monaghan Farms*, subject matter jurisdiction does not fail just because a court reaches an erroneous decision or grants a flawed decree. Instead, subject matter jurisdiction involves the "court's authority to deal with the class of cases in which it renders judgment." *Id.* at 18; *see also Closed Basin Landowners*

*Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 636 (Colo.1987). Similar to the water court's error in granting an absolute decree where it is not recognized in *Monaghan Farms*, even if the W–1987 decree is construed to adjudicate an unrecognized private in-stream right, this would constitute error and not an act exceeding jurisdiction.

Water courts have exclusive jurisdiction over water matters, § 37–92–203(1), 15 C.R.S. (1990), including determinations of instream flow rights as described in section 37–92–103(4). As in *Monaghan Farms*, Arapahoe is objecting to the type of rights decreed, not to the water court's authority to decree rights to such water, and is attempting "to recharacterize its substantive argument about the water court's ruling as a jurisdictional argument." *See Monaghan Farms* at 18.

Accordingly, applying *Monaghan Farms*, we find that, if the water court erred and did in fact decree a private instream flow right, this would simply constitute legal error vulnerable to reversal upon

---

10. We note, in fact, that five years after the 1974 court's determination that private in-stream flow rights were allowed under Senate Bill 97, we decided *Colorado River Water Conservation Dist. v. Colorado Water Conservation Bd.*, 197 Colo. 469, 476, 594 P.2d 570, 574 (1979), wherein we held that, "under S.B. 97 the Colorado Water Board can make an in-stream appropriation without diversion in the conventional sense." Subsequently, Senate Bill 481 was enacted which in part amended section 37–92–103(3), the codification of Senate Bill 97, to read:

(a) "Appropriation" means the application of a ~~certain~~ SPECIFIED portion of the waters of the state to a beneficial use PURSUANT TO THE PROCEDURES PRESCRIBED BY LAW; BUT NO APPROPRIATION OF WATER, EITHER ABSOLUTE OR CONDITIONAL, SHALL BE HELD TO OCCUR WHEN THE PROPOSED APPROPRIATION IS BASED UPON THE SPECULATIVE SALE OR TRANSFER OF THE APPROPRIATIVE RIGHTS TO PERSONS NOT PARTIES TO THE PROPOSED APPROPRIATION, AS EVIDENCED BY EITHER OF THE FOLLOWING:
....
(II) THE PURPORTED APPROPRIATOR OF RECORD DOES NOT HAVE A SPECIFIC PLAN AND INTENT TO DIVERT, STORE, OR OTHERWISE CAPTURE, POSSESS, AND

CONTROL A SPECIFIC QUANTITY OF WATER FOR SPECIFIC BENEFICIAL USES.
(b) NOTHING IN THIS SUBSECTION (3) SHALL AFFECT APPROPRIATIONS *BY THE STATE OF COLORADO* FOR MINIMUM STREAM FLOWS AS DESCRIBED IN SUBSECTION (4) OF THIS SECTION.
(Emphasis added.) (Currently codified at § 37–92–103, 15 C.R.S. (1990).) A new subsection was also added which prohibited recognition of a claim for a water right or the granting of a decree except to the extent that the waters have been diverted, stored, or otherwise captured, possessed, and controlled and have been applied to beneficial use. This new subsection, while reinstituting the requirement of a diversion, also stated that nothing in the section "shall affect appropriations by the State of Colorado for minimum stream flows." S.B. 481, Colo. Sess.Laws 1979, ch. 346, 1366, 1368 (currently codified at § 37–92–305, 15 C.R.S. (1990)).
In examining these subsequent legislative changes to determine the intent of the General Assembly, *see Swerdfeger v. Swerdfeger*, 793 P.2d 618, 620 (Colo.App.1990), we agree that the 1974 court may have erred in granting a private party's application for determination of instream flow water rights, because the legislature in 1973 may, indeed, have intended that only the state of Colorado, acting through the Colorado Water Board, should be eligible for such rights.

appeal, but would not constitute an over-stepping of jurisdictional authority. *Id.* We will not, therefore, void the W–1987 decree on the basis of lack of subject matter jurisdiction.

## III

We next address Arapahoe's assertion that the resume notice of the application for rights ultimately decreed by the W–1987 decree was insufficient. Because a water rights decree issued without adequate resume notice is void and can be challenged at any time, *Stonewall Estates v. CF & I Steel Corp.,* 197 Colo. 255, 259, 592 P.2d 1318, 1320 (1979), we agree that this claim can be raised at this time.

Arapahoe claims that the resume notice was inadequate because it failed to state that the appropriators were seeking a determination of riparian rights or in-stream flow rights. Arapahoe also asserts that the resume was misleading because it describes a water right at a specific location, causing a reasonable reader to conclude that the appropriators had placed a diversion structure at that location, not that they were claiming the entire natural flow of the stream. The 1991 water court found that the resume notice was adequate in case W–1987 under the test set forth in *Stonewall Estates v. CF & I Steel Corp.,* 197 Colo. 255, 258–59, 592 P.2d 1318, 1320 (1979), and more recently in *Monaghan Farms.* We agree.

In *Stonewall Estates,* the applicant filed an application for underground water rights. While the applicant did state in the application's caption that the subject waters were nontributary, the applicant failed to mention this fact in the body of the application. A resume was published that also failed to mention that the water was nontributary. The court subsequently entered a decree awarding absolute and conditional decrees to certain nontributary waters. Six years later, several interested parties filed statements of opposition claiming, *inter alia,* that the failure of the resume notice to mention that the water was nontributary constituted such a defect as to preclude the court from having jurisdiction to enter the decree. We agreed, finding that the resume did not substantially comply with the notice requirement because it was so misleading in its description of the water right involved. *Stonewall Estates,* 197 Colo. at 258–59, 592 P.2d at 1320. We arrived at this conclusion only after determining that, in Colorado at that time, a holder of a decreed priority in an area in which another seeks a determination of water rights could assume that the claim is for tributary water. *Id.* Therefore, the failure to mention that the claim was for nontributary water constituted a serious omission of material information. *See Pueblo West Metropolitan Dist. v. Southeastern Colorado Water Conservancy Dist.,* 689 P.2d 594, 601–02 (Colo.1984).

Recently, in *Monaghan Farms,* we examined several recent cases dealing with the adequacy of resume notice. We stated that, for resume notice to be adequate, it must put a person on inquiry notice, defined as:

> Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further. The receipt of inquiry notice charges a party with notice of all the facts that a reasonably diligent inquiry would have disclosed. Consequently, alleged deficiencies invalidate the resume only if the resume taken as a whole is insufficient to inform or put the reader on inquiry of the nature, scope and impact of the proposed diversion.

*Monaghan Farms* at 15 (citation omitted).

We agree with the 1991 court that the description of the involved water rights was not misleading. The court invoked the proper test in reaching its conclusion on this issue:

> [T]he notice for the application suggests that the applicants were seeking to appropriate substantial flows of various segments of the named streams, and this fact alone would raise a red flag (inquiry notice) to any person interested in water in the subject streams that significant water rights were being proposed in the areas described. Further, the *non-consumptive* uses claimed (recreation, wild-

life procreation, fish culture, heritage preservation) are types of uses which reasonably could be expected to occur *in the stream*, particularly where, as here, only a *direct flow* right was claimed. Consequently, the notice satisfied the threshold of putting interested parties on inquiry notice of the rights being sought.

Furthermore, Arapahoe's contention that the notice misled reasonable readers into believing that a diversion structure was in place is irrelevant when the adequacy of the notice is tested under an inquiry notice standard. The water uses indicated in the resume notice were, as the water court found, the types of uses that could reasonably be expected to occur in the stream. Under the inquiry notice standard, therefore, since the presence of a diversion is unnecessary to accommodate such uses, interested persons should have been prompted to inquire further about whether a diversion structure was present.

Having rejected the assertions that the resume notice was inadequate, we find that Arapahoe was bound by the decree entered in case W–1987 because the resume notice provided sufficient substitution for personal notice. *See Monaghan Farms* at 15.

### IV

We recognize that "to the extent a decree is beyond the authority of the court, it cannot be made valid by any rule of res judicata or any statutes of limitation." *Stonewall Estates v. CF & I Steel Corp.*, 197 Colo. 255, 259, 592 P.2d 1318, 1320 (1979) (quoting *West End Irrigation Co. v. Garvey*, 117 Colo. 109, 113, 184 P.2d 476, 478 (1947)). Yet, because we have found that the 1974 court had subject matter jurisdiction to decree the rights granted in the W–1987 decree and that Arapahoe was bound by the decree because the resume notice adequately constituted personal notice to it, we hold that the court acted within its authority in issuing the W–1987 decree. Furthermore, any collateral attack on the substance of the W–1987 decree is barred because the three-year statute of limitations, section 37–92–304(10), 15 C.R.S. (1990), has expired. Due to our holding that the court had authority to issue the decree in W–1987, and that the time period for any collateral attack has expired, we find it unnecessary to address the appropriators' arguments of preclusion under the doctrines of res judicata or collateral estoppel.

Accordingly, the order of the water court dismissing Arapahoe's complaint with prejudice is affirmed.