In the Matter of the Application for WA-
TER RIGHTS OF COLUMBINE ASSO-
CIATES and the City of Aurora, in Park
County,

Park County Water Preservation
Coalition, Appellant,

v.

Columbine Associates, The City of Aurora,
The City of Thornton, The Board of
Commissioners of Park County, The Up-
per South Platte Water Conservancy
District, Appellees,

and

State Engineer Harold D. Simpson, and
Division Engineer Richard L. Stenzel,
Appellees pursuant to C.A.R. 1(e).

No. 98SA449.

Supreme Court of Colorado,
En Banc.

Feb. 14, 2000.

Felt, Houghton & Monson, LLC, James G. Felt, James W. Culichia, Colorado Springs, Colorado, Attorneys for Appellant.

Bernard, Lyons & Gaddis, P.C., Jeffrey J. Kahn, Steven P. Jeffers, Longmont, Colorado, Attorneys for Appellees, Board of Commissioners of Park County and Upper South Platte Water Conservancy District.

Evan D. Ela, Margaret Emerich, Steven L. Snyder, Thornton, Colorado, Attorneys for the City of Thornton.

Duncan, Ostranter & Dingess, P.C., John M. Dingess, Lynn B. Obernyer, Ronald E. vonLembke, Stephanie J. Neitzel, Denver, Colorado, Attorneys for the City of Aurora.

No appearance by or on behalf of Columbine Associates.

Justice SCOTT delivered the Opinion of the Court.

The Park County Water Preservation Coalition ("Park County Coalition") appeals a sexennial finding of reasonable diligence in the development of conditional water rights decreed by the District Court for Water Division 1 ("water court"). The water court ruled that the City of Aurora ("Aurora") demonstrated reasonable diligence in the development of the subject water rights. Aurora owns the conditional water rights at issue in this case and intends to perfect those rights at some point in the future by using the water for the Columbine Reservoir Storage Project. Park County Coalition claims that the water court lacked jurisdiction to grant the conditional water rights decree because the applicant had no intent to divert water and had not made an appropriation of the water rights as defined by section 37–92–103(3), 10 C.R.S. (1999). Park County Coalition also asserts that the water court did not have jurisdiction to support its decree because the resume notice was inadequate as a matter of law.[1] We conclude that subject-matter jurisdiction properly vested in the water court in accordance with the timely filing of the application and the publication of the resume notice. We further conclude that the water court was correct in ruling that the resume notice was sufficient to provide notice to potential objectors. In addition, we hold that Park County Coalition was precluded by the statute of limitations from protesting the 83CW360 application. Hence, we affirm the ruling of the water court and uphold its decree of conditional water rights in this case.

---

1. Park County Coalition presented five issues for review:

   1. Whether a water court may adjudicate water rights appropriated after the date of filing the application;
   2. Whether a published resume of that application can truly apprise potential objectors of the nature, scope, and impact of the proposed diversion, when the applicant has no end user, no place of use, and no valid intent to appropriate prior to filing a water rights application;
   3. Whether an amended application and resume notice of the 1998 appropriation are jurisdictional prerequisites for the water court's granting Columbine's water right in the 83CW360 Decree;
   4. Whether the water court erred in ruling that the identity of the end user was irrelevant, that the original resume notice published was legally sufficient to place all interested residents of Park County on notice and that the original notice in 83CW360 was legally sufficient to apprise interested persons of the nature, scope, and impact of the conditional water rights later appropriated; and
   5. Whether the Decree in 96CW190 should be vacated and the application dismissed if the underlying Decree is declared to be void.

## I.

### A. The 83CW360 Decree

On December 30, 1983, Columbine Associates ("Columbine") filed an application for direct flow and water storage rights, including a refill right for the structure named Columbine Reservoir and Dams ("Columbine Reservoir") with an initial appropriation date of August 27, 1982. Resume notice of the application was published by the water court clerk in the January 26, 1984 editions of *The Flume* and the *South Park Times* newspapers in accordance with section 37–92–302(3), 10 C.R.S. (1999). The resume notice identified the name and address of the applicant Columbine, the location and point of diversion, and the proposed structures. The application and resume provided descriptions of the proposed uses to which the Columbine Reservoir conditional water rights were to be applied. The resume, as did the application, stated that the application was for "Direct Flow and Water Storage Right, Including Refill Right. In the Matter of the Application for Water Rights of Columbine Associates, In Park County."

In response to the published resume, the City of Denver ("Denver") opposed the Columbine application alleging in part that the application was speculative in nature because Columbine had no end user for the water on the date of the application and therefore had not demonstrated the requisite intent to make a valid appropriation.

On September 6, 1988, Columbine and Aurora moved to amend the application by adding Aurora as a co-applicant to the original application, without the need of republication. On September 8, 1988, the Referee granted the motion to amend the application without republication and allowed Aurora to be added as a co-applicant. On September 9, 1988, Denver opposed the joint Motion to Amend and moved to dismiss the underlying application on the grounds that Columbine failed to comply with section 37–92–302(2), in that "the use and proposed use of the water" was not contemplated until Columbine and Aurora entered into a contract. Denver also alleged that Columbine failed to demonstrate the requisite intent as required by *Colorado River Water Conservation District v. Vidler*

*Tunnel Water Co.,* 197 Colo. 413, 594 P.2d 566 (1979). On October 3, 1988, Columbine sold the 83CW360 application to Aurora. On July 14, 1989, the Referee issued a decree granting a storage and direct flow water right to Columbine and Aurora with an appropriation date of December 30, 1983. On July 18, 1989, Denver filed its Protest to the Ruling of the Referee, stating in part that the ruling was not in accordance with law and that the earliest appropriation date that Columbine could claim was October 3, 1988, when Columbine entered into the agreement with Aurora for use of the subject rights. On or about December 19, 1989, Columbine and Aurora and Denver stipulated that a decree may be entered based on the Referee's ruling provided that the appropriation date was October 3, 1988, rather than December 30, 1983, as reflected in the Referee's ruling. On August 23, 1990, the water court granted a conditional storage and direct flow water right to Columbine and Aurora with an appropriation date of October 3, 1988.

### B. The 96CW190 Decree

During the six-year period from August 23, 1990 through August 28, 1996, Aurora performed numerous activities in its plan for its project. In addition, it made a number of expenditures toward the completion of the appropriation and the application of the conditionally decreed water rights to beneficial use. Aurora conducted site-specific work toward the development of the subject water rights; completed an engineering pre-feasibility study; purchased other water rights; and performed an engineering analysis, application, and decree for diversion and storage of other water rights in Columbine Reservoir; and attempted to purchase other water rights for storage in the Columbine Reservoir. It also performed work on other portions of its water supply system necessary for the successful operation of Columbine Reservoir, including system-wide water acquisition and development planning, studies and research for more efficient use of Aurora's water supplies; maintenance of existing facilities; work on the Sand Creek Treatment Plant; research with regard to endangered species in the South Platte re-

charge project; participation in the Metropolitan Water Providers with regard to Two Forks Reservoir; replacement of a portion of the Aurora aqueduct; completion of the Aurora Reservoir Watershed Management Plan; Rampart Reservoir improvements; and participation in multiple water court cases for the purpose of protecting the subject water rights.

Aurora filed an application for a sexennial finding of reasonable diligence on August 29, 1996, for the conditional 83CW360 decree. On May 27, 1997, Park County Coalition filed a Statement of Opposition and a Motion to Vacate the Water Right, claiming that the underlying decree was void because it was issued without proper notice and because the water court lacked subject-matter jurisdiction. Park County Coalition asserted that because Columbine had no end user for the water, it could not have had an intent to appropriate. It further claimed that published notice of the resume was inadequate to inform potential objectors of the nature, scope, and impact of the proposed diversions and that if Aurora had been named as a co-applicant at the time of the original application, residents of Park County would have opposed the original application.

On July 7, 1997, the water court denied the Motion to Vacate the Water Right, concluding that the resume notice was sufficient to place all interested parties and residents of Park County on notice that local water rights were to be changed to a variety of new uses, including municipal uses. It further ruled that there was sufficient compliance with section 37–92–302 to put all parties on inquiry notice and, therefore, there had been compliance with the statutory mandates regarding pleading and notice under section 38–41–115, 10 C.R.S. (1999).

On November 13, 1997, the case proceeded to trial before the water court on the issue of Aurora's diligence. On September 10, 1998, the water court found that Aurora had a legitimate plan to put the subject conditional water rights to beneficial use, intended to develop and beneficially use all the subject conditional water rights listed herein, and had the capability to place the water to beneficial use within a reasonable period of time.

The water court found that Aurora's plan was economically feasible and that it had the economic and other resources necessary to put its plan into action and see it through to completion. The water court also made findings that during the diligence period, Aurora had performed project-specific work toward development of the subject water rights and application of those rights to beneficial use and performed work on other parts of its integrated water supply system necessary for the successful operation of the subject water rights or in furtherance of those rights. Further, the water court concluded that Aurora protected the subject water rights by participating in litigation opposing the application of others for water rights and changes in water rights that compete for the same water supply as the subject water rights. Thus, the water court found that Aurora had demonstrated reasonable diligence in the development of the water rights and was entitled to a decree for such rights.

On appeal, Park County Coalition argues that a conditional water right comes into existence upon the date of concurrence of the applicant's intent to appropriate water with overt acts manifesting that appropriative intent to put interested third parties on notice of the proposed appropriation. It claims that because Columbine had no end user for the water on the date of the application in 1983, it could not have had the required intent to appropriate. It also argues that the water court had nothing to adjudicate because the appropriation did not occur until five years after the application and that the court could not have jurisdiction until the application was amended and republished. Park County Coalition asserts that resume notice of the October 3, 1988 appropriation never occurred and, thus, the water court was powerless to decree a water right as of that date.

The present case requires that we determine whether the water court had jurisdiction over the water rights application filed by Columbine in Case No. 83CW360. We must also determine whether the published resume was sufficient to give notice to potential objectors.

## II.

We first address the subject-matter jurisdiction of the water court to grant the conditional decree in Case No. 83CW360. Defects in subject-matter jurisdiction can be raised at any time. *See Board of County Comm'rs v. Collard*, 827 P.2d 546, 549 (Colo. 1992); *see also Monaghan Farms, Inc. v. City & County of Denver*, 807 P.2d 9, 18 (Colo.1991). Park County Coalition argues that the 83CW360 decree is void because Columbine filed its application in 1983 without intent to divert water to a beneficial use and without having made an appropriation. Park County further claims that the water court is without jurisdiction because the resume notice was inadequate in failing to identify the end user and place of use and because no resume notice was ever given for the 1988 water right that was ultimately decreed. Therefore, it claims that potential objectors were never provided the opportunity to protest the decree through appeal in the original proceeding. It also asserts that the alleged lack of proper notice in 83CW360 deprived the water court of subject-matter jurisdiction and rendered the decree void and subject to attack at any time. We disagree.

### A.

It is axiomatic that a court must have jurisdiction over the parties and the subject matter of the case if its judgment is to be valid. *See Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627 (Colo.1987).

Subject-matter jurisdiction concerns "the court's authority to deal with the class of cases in which it renders judgment." *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 38 (Colo.1997). A court has jurisdiction over the subject matter "if the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986). Additionally, we have held that subject-matter

jurisdiction vests in the water court upon the timely filing of the application and publication of the resume notice. *See Dallas Creek*, 933 P.2d at 32; *see also Bubb v. Christensen*, 200 Colo. 21, 25, 610 P.2d 1343, 1346 (1980) (affirming water right that was obtained in full compliance with procedures prescribed by section 37–92–302).

The nature of the claim and the relief sought are to be examined in determining whether the court has subject-matter jurisdiction. *See Monaghan Farms*, 807 P.2d at 18. In this case, the underlying application was for storage rights. Under the Water Right Determination and Administration Act of 1969 ("the Act"), water courts have exclusive jurisdiction over water matters, *see* § 37–92–203(1), 10 C.R.S. (1999), including the right to store water for later application to beneficial use. *See* § 37–87–101(1), 10 C.R.S. (1999); *Board of County Comm'rs v. Upper Gunnison River Water Conservancy Dist.*, 838 P.2d 840 (Colo.1992). When the proceeding involves a matter assigned by statute to a water court, jurisdiction is thereby conferred over persons and property affected by the application. *See Gardner v. State*, 200 Colo. 221, 225–26, 614 P.2d 357, 360 (1980).[2] While it is true that the judgment of a court lacking subject-matter jurisdiction is void, *see City of Grand Junction v. Kannah Creek Water Users Ass'n*, 192 Colo. 284, 290, 557 P.2d 1173, 1177 (1976), we are not persuaded by appellant that the water court lacked jurisdiction.

In this case, the water court found that "[a]ll notices required by law of the filing of this Application have been fulfilled and the Court has jurisdiction of this Application." Our review of the record supports this finding that all the statutory requirements were met for subject-matter jurisdiction. This is true even where the opposer has not been provided with the actual identity of the end user and the place of use. The absence of such detailed facts alone will not deprive the water court of subject-matter jurisdiction to adjudicate conditional water rights that are subject to appropriation un-

---

**2.** Where the resume notice was "sufficient for the subject application," and put the parties on inquiry notice, *see Monaghan Farms*, 807 P.2d 9,

the resume notice has conferred personal jurisdiction.

der the Act. *See* §§ 37–92–203, –302, 10 C.R.S. (1999); *see also Monaghan Farms,* 807 P.2d at 18.

■ Additionally, Park County Coalition objected to the adequacy of the resume notice. However, we have previously held that the resume notice procedure, which substitutes for personal service, *see Closed Basin,* 734 P.2d at 633, does not divest a water court of jurisdiction to decree water rights so long as the form of notice and the information provided is sufficient to place parties on inquiry notice. *See id.* at 634. Hence, the water court continues to possess subject-matter jurisdiction even though the resume may be deficient in some limited technical respects. *See id.* at 636 (stating that "[e]ven if the appellants did not receive constitutionally sufficient notice, that error would not deprive the water court of subject matter jurisdiction to adjudicate a conditional water right."); *see generally United States v. City & County of Denver,* 656 P.2d 1, 8 (Colo.1982) (noting Congress's acquiescence "in comprehensive state control over the appropriation of water"); *Colburn v. Gilcrest,* 60 Colo. 92, 94, 151 P. 909, 910 (1915). Accordingly, we hold that under the facts of this case, the water court possessed subject-matter jurisdiction over Columbine's application and had the power to issue its rulings and decrees under the Act.

### B.

■ We next address Park County Coalition's assertion that the resume notice of the application for the storage and direct flow right ultimately decreed by the water court in Case No. 83CW360 was inadequate. A decree of a water court issued without adequate resume notice is void and can be challenged at any time. *See Collard,* 827 P.2d at 552. Assuming Park County Coalition's claim is properly raised at this time, we address its assertion on the merits.

■ In 1983, the water court found that the resume notice was adequate in Case No. 83CW360. Today, Park County Coalition claims that the resume notice was insufficient because it failed to disclose the end user and the place of use. Under the Act, in order to invoke the jurisdiction of a water court, a person seeking a determination of a water right must file an application with the water clerk setting forth facts supporting the ruling sought and a "legal description of the diversion or proposed diversion, a description of the source of the water, the date of the initiation of the appropriation or proposed appropriation, the amount of water claimed, and the use or proposed use of water." § 37–92–302(2)(a); *see also Closed Basin,* 734 P.2d at 633. The water clerk then prepares a monthly resume of all applications stating the "name and address of the applicant, a description of the water right or conditional water right involved, and a description of the ruling sought." § 37–92–302(3)(a). The resume must be published in local newspapers of general circulation, *see* § 37–92–302(3)(b) and mailed to any person "the referee has reason to believe would be affected or who has requested the same by submitting his name and address to the water clerk." § 37–92–302(3)(c). A published resume is notice of a claim for a water right. *See Pueblo W. Metro. Dist. v. Southeastern Colo. Water Conservancy Dist.,* 689 P.2d 594, 601 (Colo. 1984); *Stonewall Estates v. CF&I Steel Corp.,* 197 Colo. 255, 258, 592 P.2d 1318, 1320 (1979). Proceedings to determine a water right are handled through the unique resume-notice provisions of section 37–92–302. *See Closed Basin,* 734 P.2d at 633. Any person opposing the application may file a verified statement of opposition. *See* § 37–92–302(1)(b).

■ Whether the resume was sufficient to provide notice depends on the particular facts and circumstances of the case. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Closed Basin,* 734 P.2d at 633. Thus, the court's inquiry must focus on the reasonableness of the notice, giving due regard to the subject with which the statute deals and the practicalities and peculiarities of the case. *See Closed Basin,* 734 P.2d at 633. The reasonableness of the notice is determined by applying an inquiry standard—whether the notice is sufficient to reveal to potential parties the nature of the claim being made, so that such parties can

determine whether to conduct further inquiry into the full extent of those claims so a determination can be made whether to participate in the proceedings. *See City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 29 (Colo.1996).

In *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation District*, 734 P.2d 627, the applicant applied for a conditional water right over a large tract of land comprising the Closed Basin in Southern Colorado. Although the application alleged that the claimed water was "not tributary to any stream," however, it did not state whether or not the water was tributary.[3] *See id.* at 630. The application also contained a legal description of each point of diversion, but did not specify the location of the wells. The appellants in that case objected and claimed that the resume notice was deficient under section 37–92–302(2) and the notice provisions under section 37–92–303(3). In upholding the application, we held that even though the applicant failed to identify the location of the wells and the amount of water to be withdrawn from each, the resume nevertheless was sufficient in that it placed opposers on inquiry notice of the nature, scope, and impact of the proposed diversion. *See id.* at 635.

In *Monaghan Farms*, we examined several cases dealing with the adequacy of resume notice. *See* 807 P.2d at 18. We stated that in order for resume notice to be adequate, it must put a person on inquiry notice. *See id.* We defined inquiry notice as:

> Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further. The receipt of inquiry notice charges a party with notice of all the facts that a reasonably diligent inquiry would have disclosed. Consequently, alleged deficiencies invalidate the resume only if the resume taken as a whole is insufficient to inform or put the reader on inquiry of the

nature, scope, and impact of the proposed diversion.

*Id.*

Similarly, in *Bijou Irrigation Co.*, 926 P.2d at 26, we recently confirmed the sufficiency of inquiry notice for matters before our water courts. We stated, "[w]e have applied the inquiry notice standard in a number of recent cases. With the exception of cases presenting circumstances that suggested the misleading inclusion or omission of material facts, we have consistently accepted a broad definition of inquiry notice and found adequate the resume notice provided by applicant." *Id.*

If a potential objector could have anticipated by the resume notice that "disputed rights might be at issue," that person cannot forego the opportunity to "investigate the claims further." *Bijou Irrigation Co.*, 926 P.2d at 25; *see also Dallas Creek*, 933 P.2d at 38. In cases where we have held notice to be inadequate, "the resumes are characterized by the complete absence of material information concerning the disputed water rights." *Bijou Irrigation Co.*, 926 P.2d at 26.

We agree with the water court that the resume notice was sufficient to provide inquiry notice. The published resume in 83CW360 was adequate when reviewed in the light of *Closed Basin*. Here, the notice stated the location and points of diversion, the proposed structures, the amount of water claimed, and the proposed beneficial uses. The content of the published resume provided all of the information required by section 37–92–302(3)(a). Appellant argues that it did not have notice and would have opposed the 83CW360 application if it had known that Aurora was the applicant. However, Park County Coalition and the residents of Park County had sufficient notice. The information provided was consistent with that required by statute, and the application clearly stated that the storage right might affect the residents of Park County.[4]

---

3. Groundwater is presumed to be tributary unless its use has a de minimus effect on a surface stream. The person asserting that water is nontributary bears the burden of notice and proof in this regard. *See Chatfield East Well Co. v. Chat-*

*field East Property Owners Ass'n*, 956 P.2d 1260, 1271 n. 12 (Colo.1998).

4. Furthermore, in the record before the court, published editorials in local newspapers ad-

We therefore hold that based on the facts of this case, the content of the published resume described the proposed use with sufficient precision to provide inquiry notice to Park County Coalition.[5]

### C.

■ We also reject appellant's contention that the failure to mention the end user and place of use in the resume does not adequately apprise potential objectors of the nature, scope, and impact of the proposed diversion. Section 37–92–302(3)(a) of the Act provides that the water court clerk shall prepare a resume of all applications in the water division filed during the preceding month, "which shall give the name and address of the applicant, a description of water right or conditional water right involved, and a description of the ruling sought." Section 37–92–302(2) provides that standard forms for applications for a determination of a water right or conditional water right shall require "a legal description of the source of water, . . . the amount of water claimed, and the use or proposed use of water."

■ Because the notice provisions of the Act establish the statutory mechanism to advise interested parties of the pendency of an application, the applicant must strictly comply with the requirement of the Act. *See Danielson v. Jones,* 698 P.2d 240 (Colo.1985). However, compliance with the notice provisions of the Act must be judged with reference to the underlying purpose of the notice—to put interested parties to the extent reasonably possible on inquiry notice of the nature, scope, and impact of the proposed diversion. *See Closed Basin,* 734 P.2d at 634; *see also Monaghan Farms,* 807 P.2d at 17 (stating that the purpose of the published resume is "to give notice of the nature, scope, and impact of the decree sought, thereby

enabling any interested person to file a statement of opposition and contest the factual or legal grounds for issuance of such a decree").

For example, in *Closed Basin,* we stated:

As required by section 37–92–302(3)(a), 15 C.R.S. (1986 Supp.), the resume notice included a description of the ruling sought and the conditional water right involved. The resume put interested parties on inquiry notice of the nature, scope, and impact of the proposed diversion, and complied with the provisions of the Act. Giving regard to the unusual nature of the Closed Basin project, nothing more was required of Rio Grande in its application for a conditional water right.

*Id.* at 635 (footnote omitted). Similarly, in *Danielson,* 698 P.2d at 245, we noted that "compliance with the statutory notice provisions is essential to provide a meaningful opportunity to those who might be injuriously affected by the decree to oppose the application."

■ In this case, appellants argue that the end user, as well as the place of use needed to be named in the notice, so that potential objectors could be informed of the nature, scope, and impact of the proposed diversion. We disagree. There is no statutory requirement that an applicant place the end user or the place of use in its application. Rather, as required by section 37–92–302(3)(a), the resume notice included a description of the ruling sought and the conditional water right involved. The resume put interested parties on inquiry notice of the nature, scope, and impact of the proposed diversion, and complied with the provisions of the Act. Had Park County engaged in reasonable inquiry, it would have been led to facts that would have fully disclosed the end user and place of use.[6]

---

dressed the water rights and proposed use since 1979. These editorials were published in the *Park County Republican* in 1979, 1980, and 1981. They provided information regarding Aurora's intent to purchase water rights that would affect Park County and urged Park County residents to contact local elected government officials to prevent the proposed appropriation.

5. The anti-speculation doctrine of Colorado water law applies to private and municipal appro-

priators, with variations under section 37–92–103(3)(a) for a municipality's reasonably anticipated future requirements. *See Bijou Irrigation Co.,* 926 P.2d at 38–40. Had Park County chosen to object to Columbine's application, it could have raised the speculation issue.

6. Diligence proceedings may include an inquiry into whether the applicant for diligence is a party to the appropriation and can demonstrate diligence sufficient for continuation of the antedated

### III.

Finally, because we find that the water court had subject-matter jurisdiction to decree the rights granted in Case No. 83CW360 and that Park County Coalition was bound by this decree because the resume notice sufficiently constituted notice to it, we hold that the water court acted within its authority in upholding the 83CW360 decree. Moreover, Park County Coalition cannot collaterally attack the decree because the three-year statute of limitations has expired on the water court's ruling.

Section 37–92–304(10) contains the statute of limitations for water right determinations. It provides:

> Clerical mistakes in said judgment and decree may be corrected by the water judge on his own initiative or on the petition of any person, and substantive errors therein may be corrected by the water judge on the petition of any person whose rights have been adversely affected thereby and a showing satisfactory to the water judge that such person, due to mistake, inadvertence, or excusable neglect, failed to file a protest with the water clerk within three years after the date of the entry of said judgment and decree. The water judge may order such notice of any such correction proceedings as he determines to be appropriate. Any order of the water judge making such corrections shall be subject to appellate review as in other civil actions.

Under this section, any substantive challenge to a judgment of a water rights decree is barred unless filed within three years of entry of such judgment and decree and unless supported by a satisfactory showing of mistake, inadvertence, or excusable neglect. *See id.; see also Collard,* 827 P.2d at 552; *Bubb,* 200 Colo. at 25, 610 P.2d at 1346.

■■■■■ A trial court has jurisdiction to render an erroneous decision which may be reviewed on appeal. *See Closed Basin,* 734 P.2d at 637; *see also Stiger v. District Court,* 188 Colo. 407, 409, 535 P.2d 508, 509 (1975).

priority. Owners of conditional rights may change as the appropriation is being pursued to

Consequently, a water court judgment involving the same matter, even if wrong, is not subject to redetermination when the court had jurisdiction over the subject matter of the application and other water rights potentially affected thereby, through publication of adequate notice. *See Bijou Irrigation Co.,* 926 P.2d at 82–83; *see also Brennan v. Grover,* 158 Colo. 66, 68–69, 404 P.2d 544, 546 (1965) ("A judgment is not subject to collateral attack where the court had jurisdiction of the subject matter and the parties."). Further, because of Colorado's unique resume-notice procedure for publishing claims and obtaining jurisdiction in water cases, judicial findings made in water cases under the Act are rarely subject to collateral attack in subsequent cases for lack of notice. *See Williams v. Midway Ranches Property Owners' Ass'n,* 938 P.2d 515, 524 (Colo.1997).

In this case, Park County Coalition had notice of the application by reason of the publication of the resume. *See* § 37–92–302(3)(a). Park County Coalition did not file a statement of opposition to the application, which resulted in the 83CW360 decree, *see* § 37–92–302(1)(b). In addition, Park County failed to file a protest or seek review of the ruling of the referee, *see* § 37–92–304(2), and it did not seek correction of any substantive errors in the judgment and decree of the water court within three years after it was entered. *See* § 37–92–304(10). Instead, Park County Coalition failed to act until Aurora sought a finding of reasonable diligence, then it filed a Statement of Opposition on October 31, 1996, and a Motion to Vacate Water Right was filed on May 13, 1997.

Due to our holding that the water court had the authority to issue the decree in Case No. 83CW360 and because the time period for review had expired, we find it unnecessary to address the arguments raised by Park County Coalition regarding whether an amended application should have been filed and republication should have occurred. Any factual or legal validity in the claim that the 96CW190 decree and application should be vacated based on the purported flaws in the

completion. *See Dallas Creek,* 933 P.2d at 42.

rulings or decree issued in Case No. 83CW360 is now foreclosed by the statute of limitations. As such, we do not address the arguments made by Aurora that appellants' contentions are barred by the doctrine of res judicata. We conclude that the statute of limitations precludes consideration of the merits of the remaining contentions.

## IV.

Accordingly, we affirm the ruling and decree of conditional water rights of the water court in every respect.